MINNIE M. KNOCHE, ADMINISTRATRIX, APPELLEE, V. PEASE GRAIN & SEED COMPANY ET AL., APPELLANTS.

277 N. W. 798

FILED FEBRUARY 22, 1938. No. 30193.

*Story & Thomas, John H. Roper* and *Rinaker, Delehant & Hevelone,* for appellants.

*Hubka & Hubka, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and YEAGER, District Judge.

CARTER, J.

This action was brought by Minnie M. Knoche, special

administratrix of the estate of John Henry Knoche, deceased, to recover damages for the death of John Henry Knoche alleged to have been caused by the negligence of the driver of a truck belonging to the defendant. The verdict of the jury was for plaintiff in the sum of $5,000. The trial court required a remittitur of $1,000 with which plaintiff complied. Judgment was thereupon entered for $4,000. Defendant's motion for a new trial was overruled and from this order an appeal is taken. Plaintiff filed a cross-appeal claiming that the trial court erroneously required the remittitur and praying that this court sustain the verdict for the full $5,000.

The evidence discloses that the deceased was traveling west on Court street in the city of Beatrice and at the intersection of Court and Bluff streets made a left turn to the south apparently with the intent of proceeding south on Bluff street. The truck, belonging to the Pease Grain & Seed Company, was traveling east on Court street. At the intersection in question, the car and truck collided, causing the death of John Henry Knoche, the driver of the car.

Plaintiff contends that the driver of the truck failed to keep a proper lookout, that he failed to yield the right of way to the deceased, that defendant failed to have sufficient brakes upon its truck, that the truck was driven at an excessive rate of speed, and that it was not equipped with booster brakes as required by statute. The defendant claims that the deceased failed to signal his intention to make a left turn, that he angled across or cut the corner of the intersection contrary to law, and that he entered the intersection at a time when the truck was proceeding through it.

The plaintiff called as a witness one Arthur Engler who testified that he was standing near a window in a filling station located on the southwest corner of the intersection and that, upon hearing the crash resulting from the collision, he looked up and saw what happened from then on. He testified that he did not see the truck before the col-

lision occurred. This witness was permitted to testify over objection that in his opinion the defendant's truck was traveling "right at 40 to 45 miles an hour" when it came into the intersection. Subsequently this witness testified that he considered how the truck pushed the car around, the fact that the truck proceeded on and broke off a telephone pole, and the tracks made by the truck, in determining its rate of speed. He testified that the truck traveled 12 or 13 feet during the time he saw it and that "it was just a flash like that and he was right under that pole." Plaintiff produced no other evidence of excessive speed except that which the circumstances surrounding the accident disclosed. The truck driver testified that he was not driving over 20 miles an hour. The question of excessive speed of the truck was submitted to the jury. The evidence that the truck was traveling 40 to 45 miles an hour was improperly admitted. In *Bergendahl v. Rabeler,* 133 Neb. 699, 276 N. W. 673, we said: "This court has held that the speed of an automobile is not a matter of exclusive expert knowledge or skill and that any one with a knowledge of time and distance is a competent witness to give an estimate. *Patterson v. Kerr,* 127 Neb. 73, 254 N. W. 704; *Serratore v. Miller,* 130 Neb. 908, 267 N. W. 159. But it is very evident from the record that these witnesses had no reasonable time, means, distance or opportunity to formulate a basis for an opinion as to the speed of defendant's car." The plaintiff claims that the testimony of the witness as to what happened after the collision was sufficient to provide the foundation for his testimony. Testimony based on these facts would be a mere conclusion of fact and an attempt to impinge upon the province of the jury. The question of the speed of the truck is one of the important issues in the case. The only evidence of excessive speed, other than a conclusion which might be drawn from the circumstances surrounding the accident, is that of the witness Engler. We are obliged to hold that this evidence was prejudicial to the rights of the defendant and constituted reversible error.

The trial court also instructed the jury with reference to the use of defective brakes when as a matter of fact there was no evidence by any one that the brakes on either the truck or the automobile were defective. We have repeatedly held: "Where a question of fact that is material to the case is submitted to the jury by the trial court, upon which there is no evidence to support a finding, it constitutes prejudicial error." *Roseland v. Chicago, M., St. P. & P. R. Co.*, 130 Neb. 637, 265 N. W. 882. See, also, *Mannion v. Talboy*, 76 Neb. 570, 107 N. W. 750; *Tighe v. Interstate Transit Lines*, 130 Neb. 5, 263 N. W. 483.

The record shows that the gross weight of the truck and its load exceeded 12,000 pounds. It further shows that the truck was not equipped with "power brakes, auxiliary brakes, or some standard booster brake equipment," as required by section 39-11,106, Comp. St. Supp. 1935. The trial court properly instructed the jury on this point, but the contention that the failure of the defendant to comply with this section of the statute justified the giving of the instruction complained of relative to defective brakes is without merit.

We have come to the conclusion that the trial court erred in the respects noted and that, under the circumstances of this case, the rights of the defendant were prejudiced thereby. The judgment of the trial court is therefore reversed and the cause is remanded for a new trial in accordance with the rules of law set forth in this opinion.

REVERSED.

PAINE, J., dissenting.

This decision holds that the admission of the evidence of Engler as to the speed of the truck was prejudicial, and the judgment is reversed.

The point involved is one which will come up frequently, and in my opinion is not free from doubt.

There are any number of decisions that, in considering the speed of an automobile and the competency of a witness to testify thereto, permit one to take into consideration skid marks and circumstances portraying the physi-

cal facts immediately after the accident, and a person seeing the crash, basing his opinion on all of the conditions and circumstances as he saw them, and virtually following through the accident, should be permitted to testify.

"The question as to the opportunity of a witness to judge, under the particular circumstances, the speed of an automobile, has been held, as a general rule, to go to the weight of his testimony rather than to its admissibility." 5 Am. Jur. 860, sec. 651.

"Statements based upon observation of witnesses who saw the progress of the car do not constitute the sole medium of proof upon this point. Various factors, such as skid marks, distance traveled after impact, force of impact, etc., are pertinent in arriving at an estimate of the rate of speed of an automobile." 5 Am. Jur. 850, sec. 630.

"It is clear that one who has had experience with objects moving at speed, as an experienced railroad engineer, or one who has operated an automobile for some time and observed the speedometer, may testify as to the speed of an automobile, and the opinion may be based on the distance it skidded." Babbitt, Motor Vehicle Law (4th ed.) 1670, sec. 2306.

"It is not essential to establish the negligence of a motorist, who has injured a traveler in the operation of his machine, that eyewitnesses of the accident be produced. Circumstantial evidence may constitute adequate proof of negligence." 10 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) 152, sec. 6555.

"It has been held that a witness will not be permitted to give his opinion of the speed of an automobile upon a particular occasion, where he was not an observer, and the only information he has on which to base his estimate is the track of the machine on the pavement. On the contrary, such evidence has been held to be proper. The distance which a certain car has skidded in the attempt to stop it should furnish some basis for the opinion of an expert, and skid marks may be considered by the jury

on the question of speed." 15-16 Huddy, Cyclopedia of Automobile Law (9th ed.) 347, sec. 180.

We find the case of *Lewis v. Miller,* 119 Neb. 765, 230 N. W. 769, in which it was held: "A witness who has shown himself qualified to give an opinion as to the speed of a moving automobile may express an opinion as to the speed a car is moving, although the same be coming directly toward him, such fact not affecting the competency of his testimony but rather the weight to be given the same."

Our court in the case of *Showers v. Jones Co.,* 126 Neb. 604, 253 N. W. 902, held: "Where the rate of speed of an automobile is the question, the time and place with reference to the scene of the accident as of which evidence is admissible rests largely in the discretion of the court, and, unless abused, its ruling will not constitute reversible error."

In the case of *Patterson v. Kerr,* 127 Neb. 73, 254 N. W. 704, our court, in considering the proposition of speed, stated: "The defendant was competent to testify as to the speed of the car. 'A witness who sees a moving car, and possesses a knowledge of time and distance, is competent to express an opinion as to the rate of speed.' "

In the discussion upon this proposition in the same case, the court cites and quotes the case of *Owens v. Iowa County,* reported in 186 Ia. 408, 169 N. W. 388, wherein it was held: "Testimony of one, several hundred yards directly in front of an automobile in the nighttime, as to the speed thereof, might be of little value, but should not be excluded on that account." (169 N. W. 388.)

When an independent observer of a moving object expresses an opinion as to speed, the testimony is received and appraised according to the means of the observer and the standards he has. *Coffee v. Omaha & C. B. Street R. Co.,* 79 Neb. 286, 112 N. W. 589.

Arthur Engler operated a filling station at the southwest corner of the intersection where the collision occurred. He was standing at his cash register, heard the

crash, instantly looked out of the window, saw the cloud of dust, and saw the truck continue east, taking the automobile with it. The truck dropped the car off, and kept going around 50 to 55 feet from where the collision occurred. "Q. When you saw this Ford 8 truck going into that intersection, do you know about how fast that truck was traveling? A. I do. Q. What is that opinion? A. I would judge right at 40 to 45 miles an hour." He testifies that there was a telephone pole at the southeast corner of the street on the south side, and that he saw the truck as it shattered the base of the pole and left it swinging back and forth; that after the truck broke off the telephone pole, which was 8 to 10 inches through, it continued on east in its course about 38 feet before it came to a stop.

If a close observer watches a heavy truck pushing a lighter car along for some distance, then it veers off and cuts off a heavy telephone pole, and then he sees it continue 38 feet after doing that until it can be brought to a stop, he has observed sufficient of the speed, power, and momentum of such truck to be able to give the jury a positive idea of the speed of the truck just before the crash as it came into the intersection. It would be physically impossible for a car moving at 5, 10, 20, or 30 miles an hour to do the things which this witness saw the car do, and from the physical facts which he observed, and from his experience with cars and judging speed, it does not appear to me that it was prejudicially erroneous for him to give his estimate of the speed of the car just before the crash.

But, assuming that the witness Engler could not testify to the speed, yet the undisputed evidence is that Knoche was in the intersection first, had made his turn to the left, and was proceeding in the direction in which he had a perfect right to go, and which right the law gave him. The defendant had, under the circumstances, no business in the intersection at that time and under the conditions. It would make no difference about the brakes, or the speed, or anything else in this connection. He just did

not have a right to be there under the law, and certainly the only question would be the amount of damage, if any, that the widow of this blacksmith, killed by this truck, would be entitled to recover. This apparently is all there is to the lawsuit: The rights of the respective parties in the intersection. Defendant's own witness placed Knoche there, stated he gave the signal, and there is no evidence to the contrary. In my opinion, the judgment should have been affirmed.