HERMAN JOHNK, ADMINISTRATOR, APPELLEE, V. CORNELIUS SCANLON, APPELLANT.

285 N. W. 488

FILED APRIL 21, 1939. No. 30524.

*Chambers, Holland & Locke* and *T. J. Kiesselbach,* for appellant.

*Cook & Cook* and *Walter B. Sadilek, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

CARTER, J.

This is an action brought by the administrator of the estate of Dorothy Johnk, deceased, to recover damages for her alleged wrongful death which occurred while she was riding in an automobile as the guest of the defendant. The verdict and judgment were for the plaintiff and the defendant appeals.

The evidence discloses that the defendant was driving home after attending a dance at Howells, accompanied by Mildred Poole, Mildred Krepel, and the deceased, Dorothy Johnk. The deceased was riding in the front seat with the driver, and the other two girls were riding in the rear seat. The girls in the rear seat were asleep at the time of the accident, which occurred between 1:30 and 2 o'clock a. m., on the morning of October 13, 1937. The accident took place at a bridge located at a sharp angle to the general line of the road at the bottom of a hill. The evidence shows two skid marks commencing at a point 125 feet north of the bridge and running to the point where the automobile collided with the bridge. The iron railing extending out from the east side of the north end of the bridge was dam-

aged, and there is evidence that the span of the bridge itself was struck a forceful blow at that point. The car went through the railing and fell to the bottom of the creek below. The car was badly damaged. The deceased apparently went through the windshield and was instantly killed. The defendant suffered serious injuries and the two girls in the rear seat were badly shaken up. It is upon these facts that plaintiff relies for a recovery under the guest statute.

Defendant testifies that as he came to the top of the hill he was traveling from 40 to 45 miles an hour. As he started down the hill, he testifies that he reduced his speed to 30 or 35 miles an hour. His testimony is that he did not see the bridge constructed on the angle with the general line of the road until he was within 125 feet of the north end of it. He testifies that he applied his brakes and used every means at his disposal to negotiate the turn onto the bridge, but failed to make it. He says that he was driving with both hands on the wheel and his eyes on the road. He states, however, that he failed to see a "slow" sign located 1,056 feet north of the north end of the bridge.

The two girls testified that defendant traveled the same road in going to Howells. One of them related that defendant remarked that this was a dangerous bridge as they crossed it the first time. The defendant's testimony is that he had no recollection of having previously crossed the bridge. Defendant was not familiar with the road, his evidence being that he had never been over it before. There is also evidence in the record that the gravel was heavier at the bottom of the hill due to its washing down. Defendant testifies that the loose gravel contributed to the skidding of his car.

The defendant contends that this evidence is not sufficient to sustain a finding of gross negligence and that the trial court should have directed a verdict for the defendant.

In order for a guest to recover under the automobile guest law, section 39-1129, Comp. St. Supp. 1935, he must allege and prove that his host was guilty of gross negli-

gence in the operation of the automobile, or was under the influence of intoxicating liquor. The existence of gross negligence must be determined from the facts and circumstances of each case. Ordinarily, the question of negligence, whether slight or gross, is one of fact, and in case of conflict the verdict of the jury is controlling. But there must be evidence of gross negligence sufficient to sustain a verdict. Evidence of ordinary negligence, even if conclusively established, will not support a judgment under the guest law, and if the only construction that can be placed upon it is that it is ordinary negligence only, the trial court should instruct a verdict for the host.

The evidence of the plaintiff in the case at bar is purely circumstantial. The skid marks of the car, the damage to the bridge, and the condition of the car after the accident are relied upon as proof of gross negligence. It is true that skid marks were found on the road for 125 feet north of the bridge. That they were caused by the application of the brakes of defendant's car and contributed to by the gravel on the road is quite apparent from the record. There is no testimony, expert or otherwise, as to the rate of speed defendant was traveling as he approached the bridge, except his own statement that he was proceeding at a rate of 30 or 35 miles an hour. The bridge in question was constructed across the creek at a very bad angle and to the right of the general line of the road. That it is a dangerous bridge is very evident from the photographs in the record. The contention is advanced that defendant failed to keep a proper lookout for objects in the road and plaintiff invokes the rule set forth in *Hendren v. Hill*, 131 Neb. 163, 267 N. W. 340, wherein the court said: "It is the duty of an automobile driver, in driving a car in the night-time, to keep such an outlook ahead that he will see an obstruction as soon as it is illuminated by his lights, and it is his duty to have his car under such control that he can stop to avoid a collision with an object within the area lighted by his lamps." It must be borne in mind, however, that a bridge on a highway is not ordinarily an obstruction or object of

danger. It is, in fact, a safety device constructed to permit a safe passage across a stream or depression. It certainly cannot be said that a driver of a car at night must comply with the foregoing rule when the bridge is first illuminated by his lights. It seems to us that the duty referred to would be cast upon the driver under such circumstances when he first saw, or ought to have seen, the dangerous character of the bridge. It is evident from the physical facts as well as the evidence of the defendant that he did not discover the danger until he was within 125 feet of the bridge. There is no evidence in the record that he ought to have discovered it sooner. This court has said: "Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It may be said that it indicates the absence of even slight care in the performance of a duty, and such, we think, is the meaning intended by the legislature." *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96. In a case somewhat similar where the driver failed to negotiate a curve on the highway, the supreme court of Michigan said: "Defendant may have been negligent in driving too fast and in not applying the brakes in time. This lack of care on the part of defendant was at most but ordinary negligence." *Mater v. Becraft,* 261 Mich. 477, 246 N. W. 191.

There is no satisfactory evidence in the record that defendant had knowledge of the situation existing at the bridge. There is no evidence of a continued course of conduct in driving his car that would tend to establish negligence. It is not contended that any objection had been previously made to his manner of driving. That the bridge in question was dangerous and a menace to safe travel is established. That defendant saw the dangerous character of the bridge when he was more than 125 feet from it is conclusively established by the evidence of both the defendant and plaintiff. The defendant testified that he supposed that the road went straight through, a very natural supposition. There is no evidence of a single act on the part of the defendant which could be construed, in the

present state of the record, as gross negligence. The record does not establish such speed as would amount to gross negligence under the circumstances. The most that could be said is that defendant was guilty of ordinary negligence.

This court has consistently held that the intent of the legislature in adopting the guest statute was that evidence of some act amounting to more than ordinary negligence should be required before a guest could recover from his host. In the absence of any evidence of such an act, directed verdicts for the hosts have been approved by this court. Several sessions of the legislature have gone by since this interpretation was placed upon the guest statute without any further legislative action with reference to it. Under these circumstances we feel obliged to abide by the established interpretation until the legislature sees fit to assert its legislative powers on the subject.

There is not sufficient evidence of any act of gross negligence in the record to warrant the submission of this case to the jury. In view of the fact that such evidence may be supplied, the case will be remanded for a new trial.

REVERSED.