MARILYNN MIERENDORF, APPELLEE, V. ROBERT SAALFELD
ET AL., APPELLANTS.
295 N. W. 901

FILED JANUARY 17, 1941.   No. 30906.

*Rosewater, Mecham, Shackelford & Stoehr,* for appellants.

*Gross & Crawford, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and YEAGER, JJ., and ELDRED, District Judge.

MESSMORE, J.

The plaintiff recovered a judgment in the district court for Douglas county, in the amount of $2,000, for alleged injuries received by her in an automobile collision. Defendants appeal.

The plaintiff, a guest, charged defendant Robert Saalfeld, driver of a 1937 Ford V-8 coach, with gross negligence in the following particulars: Excessive speed (40

miles an hour) ; failing to keep a proper lookout; failing to yield the right of way to an Oldsmobile driven by one Clara Smith and failing to observe such automobile in the intersection; and failing to keep the car he was driving under control. The defendants answered, in substance, by admitting the occurrence of the accident; denied negligence on the part of defendants; affirmatively alleged negligence on the part of Clara Smith; further, that if defendant Robert Saalfeld was guilty of negligence it was, in no event, more than slight, and that the guest, Marilynn Mierendorf, was guilty of negligence, at least equal in degree, which contributed directly and approximately to the accident and the injuries received by her. The reply was a general denial.

The record discloses: Clara Smith was driving a 1937 model Oldsmobile north on Fifty-first street in the city of Omaha on the evening of May 18, 1938. When she approached Dodge street, which runs east and west, she came to a complete stop at a stop sign, looked to the left, or west, and saw a car approaching two blocks distant; then, looking to the right, or east, she saw the Ford car, driven by the defendant Robert Saalfeld, which was proceeding west on Dodge street. She proceeded to cross the intersection in low gear at a speed of three or four miles an hour, then shifted into intermediate gear, increasing her speed to about eight miles an hour. Dodge street, an arterial highway, comprises four driving lanes, approximately nine feet in width, and two parking lanes, approximately six feet in width, one on the south and one on the north side of the street. While proceeding across the intersection the driver glanced to the east, as she stated, for a second and saw the Ford car at a distance of 20 feet from the intersection; she estimated the speed of the Ford at 40 to 45 miles an hour. The lights on both cars were burning.

Defendant Robert Saalfeld testified: He had proceeded west on Dodge street from Thirty-third street, through the traffic light when in his favor, at a moderate rate of speed; the lights being placed about three blocks apart. At Fiftieth

street he retarded the speed of his car to 15 or 18 miles an hour and subsequently approached the intersection of Fifty-first and Dodge streets at a speed of 28 miles an hour. He was looking to the right, or north, where cars were parked along the parking lane, to ascertain whether any person might be running out from the cars parked. He looked to the left and saw the Oldsmobile 5 to 10 feet distant. Clara Smith's version of the impact is that at the time thereof the front wheels of the Oldsmobile were about even with the north parking lane on Dodge street, approximately six feet from the curb; that the Oldsmobile was struck by the Ford at the right front door; that the left side and front of such car were not damaged; that the Oldsmobile had proceeded across the parking lane from the south side of Dodge street to the two south travel lanes and through the north middle travel lane, and the front wheels of her car were across the north travel lane. Robert Saalfeld's version is that when he first saw the Oldsmobile it was at a distance of 5 to 10 feet to the left of him, crossing the intersection, going north. The front of the Oldsmobile was on his side of the middle lane. He was straddling the black stripe on the south travel lane. He stated, in substance, that while so driving he did not look either to the left or right until about 10 feet, or such a matter, from the intersection; then looked to the right and started to look to the left, and the Oldsmobile was directly in front of him. He then attempted to apply his brakes and to swerve to the right and did so. The left front of the Ford car came in contact with the right front wheel of the Oldsmobile and knocked the front wheel toward the motor. The respective positions of the two cars after the impact were: The Oldsmobile was standing on the northwest corner of the sidewalk; the left side of such car was close to an underpass, which had a high stone railing around it. The car was facing northwest at an angle. The Ford car was facing due north on the east side of Fifty-first street, approximately four or five feet north of the sidewalk, running east and west.

At the time of the accident Robert Saalfeld was about 17

years of age, Marilynn Mierendorf 16 years, both pupils of the same high school and friends. They had known each other for a year or more, and Marilynn had often ridden with Robert in the Ford car. On the evening in question Robert called at her house shortly after 8 o'clock; they had no particular destination, and had been riding for about an hour when the accident occurred. Marilynn had not objected to, protested against or found fault with Robert's driving at any time during the course of their ride. At the time of the accident, she did not notice Robert; she was looking out of the right window of the car and was humming or singing. She testified that the first she knew of it was when "I heard the crash and was thrown forward· in the seat then, and I struck the windshield and the dash board with my chest and the side of my face made a hole in the windshield." She did not know the speed of the Ford car, but testified it had not slackened before the collision, and "there weren't any brakes applied at all, for quite a ways." Broken glass from the Oldsmobile was found in the northeast corner of the intersection. Marilynn's mother testified as to a conversation she had with Robert at the hospital about an hour after the accident, wherein she asked him how it happened, and he replied: "I don't know. I never saw the woman. I don't know where she come from." Robert testified that when Marilynn's mother saw him "she threw her arms around me, and I couldn't say very much. I was all broken up I know." We deem a further review of the evidence unnecessary.

This action was brought under the guest statute. Comp. St. Supp. 1939, sec. 39-1129. For the purposes of this case, to enable the plaintiff to recover, it is incumbent upon her to prove, by a preponderance of the evidence, that defendant Robert Saalfeld was guilty of gross negligence in the driving of the Ford car. There is no evidence of the use of intoxicating liquor in any manner by any of the parties here involved. At the conclusion of. the plaintiff's evidence and again at the conclusion of all the evidence, the defendants moved for a directed verdict, which was overruled.

The pertinent question is whether or not the evidence is sufficient to constitute gross negligence, within the meaning of the guest statute and the law, and whether or not such evidence is sufficient to have warranted the submission of the case to the jury.

This court said in *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96: "What amounts to gross negligence in any given case must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence. Ordinarily, the question of negligence, whether slight or gross, is one of fact. If the evidence respecting it is in conflict and is such that ordinary minds might draw different conclusions therefrom, then a question of fact is presented for the jury to determine." The foregoing language has been approved in many cases subsequently. See *Larson v. Storm,* 137 Neb. 420, 289 N. W. 792.

Gross negligence has been defined as great or excessive negligence. It indicates the absence of even slight care. *Morris v. Erskine, supra.* It is the entire failure to exercise care or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the safety of others. *Larson v. Storm, supra.*

*Larson v. Storm, supra,* is cited by the plaintiff as a case similar to or in point with the instant case. With this contention we cannot agree. Without reciting the facts, the speed of the car in the *Larson* case was 50 to 55 miles an hour; the traveled road was a country road, and the terrain and physical conditions were distinctly different from those in the case at bar. The guest in the *Larson* case had made repeated protests; there was a continued course of negligent driving, and the driver looked back at the guest for some period of time.

Inasmuch as the question of gross negligence depends on the facts in each individual case (*Morris v. Erskine, supra*), we deem unnecessary an analysis of the many cases decided by this court on the question. In the instant case, there is no evidence of a continued course of conduct by

defendant Robert Saalfeld, in driving the Ford car, that would tend to establish gross negligence. Marilynn Mierendorf had ridden with him on many occasions, knew of his driving ability, and, in fact, seemed perfectly contented; she was humming or singing; she had no fear of danger due to his driving, and there was no apparent danger or peril at this well-lighted intersection that could be anticipated by Robert, as developed by the circumstances of this case.

The plaintiff adjudicated her claim against the driver of the Oldsmobile. The evidence with reference to the speed of the Ford car is not convincing. Clara Smith stated that when she saw the Ford, before she drove into the intersection, it was a block or more away. She drove into the intersection in low gear at a speed of three or four miles an hour, shifting into second gear and increasing her speed to eight miles an hour. She had paid no attention, during that time, to the speed of the Ford car. Her testimony on the speed is based upon a glance at the Ford when she looked the second time, which lasted for a second, when her car was approximately in the center of the intersection, and the Ford was then 20 feet east of the intersection.

"Ordinarily, the speed of an automobile is not a matter of exclusive expert knowledge and skill and any one with a knowledge of time and distance is a competent witness to give an estimate.

"Where it appears that a witness had no reasonable time, means, distance or opportunity to formulate a basis for an opinion as to the speed of a car, the testimony of such witness is insufficient to sustain a finding of excessive speed in the absence of other evidence on the subject." *Bergendahl v. Rabeler,* 133 Neb. 699, 276 N. W. 673.

In the instant case Clara Smith, under the circumstances, did not have the time, means, distance or opportunity to formulate a basis for an opinion as to the speed of the Ford car. The evidence is barren of any additional evidence of the Ford's speed, with the exception of the statement of defendant Robert Saalfeld. Under the circumstances, the

foregoing authority applies to the testimony of Clara Smith with reference to speed.

This court in *Knoche v. Pease Grain & Seed Co.*, 134 Neb. 130, 277 N. W. 798, applied the rule as appearing in *Bergendahl v. Rabeler, supra,* and, in addition, held: "Where it appears that a witness had no opportunity to formulate a basis for an opinion as to the speed of a motor vehicle, it is error to permit him to give an estimate."

In *Roseland v. Chicago, M., St. P. & P. R. Co.*, 130 Neb. 637, 265 N. W. 882, it was held: "Where a question of fact that is material to the case is submitted to the jury by the trial court, upon which there is no evidence to support a finding, it constitutes prejudicial error."

Under the circumstances in the instant case, the submission of the issue to the jury on the question of speed constituted prejudicial error.

"This court has consistently held that the intent of the legislature in adopting the guest statute was that evidence of some act amounting to more than ordinary negligence should be required before a guest could recover from his host. In the absence of any evidence of such an act, directed verdicts for the hosts have been approved by this court. Several sessions of the legislature have gone by since this interpretation was placed upon the guest statute without any further legislative action with reference to it. Under these circumstances we feel obliged to abide by the established interpretation until the legislature sees fit to assert its legislative powers on the subject." *Johnk v. Scanlon*, 136 Neb. 187, 285 N. W. 488.

"When evidence in a guest case is resolved most favorably toward the existence of gross negligence, and a fixed state of facts thus obtained, the question whether such facts will sustain a finding of the existence of gross negligence is a question of law." *Johnk v. Scanlon, supra.*

The record fails to establish gross negligence on the part of defendant Robert Saalfeld. The judgment of the district court is reversed and the cause remanded.

REVERSED.