ALICE H. BROWN, APPELLEE, V. THOMAS MULREADY, APPELLANT.

300 N. W. 421

FILED OCTOBER 24, 1941. No. 31180.

*Frederick M. Deutsch,* for appellant.

*Moyer & Moyer, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and YEAGER, JJ., and FALLOON and ELLIS, District Judges.

PAINE, J.

This was an action by a married woman, living with her husband, against the owner of an automobile, to recover damages for personal injuries sustained while she was riding as a guest of the wife of the owner of the car. The jury returned a verdict for plaintiff for $4,458, and defendant appeals.

Plaintiff filed an amended petition, alleging that she was a married woman, 48 years of age, and living with her husband, and was a resident of Norfolk, and alleged that the defendant, also a resident of Norfolk, owned a Chevrolet sedan, and maintained the same as a family automobile, and among the members of the family who had habitually used it was his wife, Helen Mulready.

Plaintiff further alleges that on July 24, 1939, she was a guest without hire at the invitation and request of defendant's wife; that they left the city of Fremont at 7:00 p. m. on their return trip to Norfolk on Highway No. 275; that for several miles east of the city of Norfolk this concrete highway traverses a very hilly country, with high fills and deep cuts; that the soil is clay, which after a rain washes across the highway, rendering it slippery and dangerous for motor vehicles; that there had been a heavy rain earlier in this locality, and it was dark and still drizzling, and there had been several miles where the highway in spots was slippery, all of which was known to the defendant's wife, who did not observe reasonable care and caution, but instead drove the automobile in a grossly negligent manner, driving it at a high and dangerous rate of speed of approximately 40 miles an hour, downhill, over roads wet and coated with muddy clay; that at a point southeast of Norfolk, and in Stanton county, while going downhill, defendant's wife, without taking proper precautions, lost control of the automobile, which plunged off the road and over an embankment, and turned over,

coming to rest some ten feet below the top of the embankment, and causing severe injuries to the plaintiff; that among the injuries the plaintiff suffered were a dislocation of the fifth and a partial fracture of the body of the sixth cervical vertebra in her neck, a compression of the nerve root between these vertebræ, bruises about the body, and a nervous shock, causing her to suffer excruciating pain, for which she claims damages in the sum of $10,000.

For an answer to this amended petition, the defendant admits that he owned the car, which was being used for family purposes, and that his wife invited plaintiff to ride to Fremont and back as a guest, over U. S. Highway No. 275, and that the accident occurred three miles east of Norfolk.

Defendant further alleges that, while his wife was driving said automobile on the return trip in a careful and prudent manner, and at a reasonable rate of speed, at no time in excess of 40 miles an hour, she suddenly, without any knowledge of or warning, encountered a strip of mud, which was wet and slippery, and before she could bring her car to a stop the automobile skidded over the bank of the highway and came to rest 200 feet east of the low point of said pavement; that the spillway on the north side of said pavement had become dammed up so that a strip of mud about ten feet wide and several inches deep extended entirely across the pavement, but that the pavement was free from mud on either side of this strip; that none of the occupants of said automobile made any protest about the manner in which it was being operated at the time; that plaintiff rode in the front seat and had equal opportunity with defendant's wife to see the mud across said highway, but gave no warning thereof, and was by reason thereof guilty of negligence directly and proximately causing said accident; that plaintiff knew the road and the ability of the driver, and assumed all risk incident to said highway and incident to the incompetency, if any, of defendant's wife in driving an automobile.

For a reply to this answer, the plaintiff admits that the

accident occurred at the location described in the answer, but denies all other allegations which do not admit the truth of the allegations of the amended petition.

In the oral argument in this court, counsel devoted most of his time to objections of plaintiff which had been sustained by the court, thus preventing the defendant from introducing important and material evidence tending to impeach the plaintiff in her testimony.

The defendant, at the time of impaneling the jury, requested the court to call eighteen men to the jury box for *voir dire* examination, so that peremptory challenges might be intelligently exercised. To this the plaintiff objected. The court stated: "Whereas it has been common practice to call twelve jurors for examination, and eighteen have only been called by agreement of both parties, the objection will be sustained and the request for eighteen jurors will be denied." To which the defendant excepted. In civil cases it is usual for the court on its own motion to order eighteen jurors to be examined and passed for cause before the counsel are required to exercise any of their peremptory challenges. In our opinion, this request of the defendant should have been granted, although its refusal was not prejudicial error under the circumstances.

In the opening statement to the jury the defendant, over a vigorous objection which was overruled, referred to a deposition of the plaintiff which had been taken, and to statements she had made therein that the road through these hills was a solid mass of mud, and that she was constantly protesting to the driver. This deposition of the plaintiff was used continually by defendant in the cross-examination, and referred to many times.

The attention of the plaintiff was called to this deposition which she had given in February, 1940, at which attorneys Koenigstein and Shurtleff were present, and the evidence was taken by Mr. Powers. The trial began on December 18, 1940. Plaintiff was asked whether she had not testified in the deposition that the highway from the beginning of the hill to Pilger was one continuous ribbon

of mud, uphill and downhill, to the place of the accident. The objection as improper cross-examination, incompetent, irrelevant and immaterial, was sustained, to which defendant excepted.

"Q. I will ask you if you did not testify at that time as follows: 'Q. So far as you know the worst spot you hit so far as the mud on the pavement was concerned, was at the place of the accident, is that true? A. I don't know that. Q. I said as far as you know? A. As far as I know.' Q. Did you so testify when your deposition was taken last February? Mr. Moyer: That is objected to as incompetent, irrelevant and immaterial, improper impeachment, the questions on which the answers are predicated being leading and suggestive, calling for a conclusion of the witness and not a statement of fact. Sustained. Defendant excepts."

In following up this same line of inquiry, R. M. Powers was called as a witness for the defendant, and testified that he had been an official court reporter, and was a notary public; that on February 24, 1940, he went to the home of the plaintiff to take her testimony, at which time Mr. Shurtleff and Mr. Koenigstein appeared as her attorneys, the deposition being taken in the dining-room; the witness, having been duly sworn to tell the truth, was examined by Mr. Deutsch. Mr. Powers then testified that he had before him the shorthand notes taken on this occasion. "Mr. Deutsch: Defendant offers to show by the witness, and if permitted to testify he will testify that the following questions were propounded to Mrs. Brown in the same deposition and she gave the following answers: 'Q. The fact is you never slipped around at all until you had hit this bad place and went for the ditch? A. We skidded once in awhile, the back end of the car would kind of twist. Q. Did it turn around at right angles? A. No. Q. Did you stop your car at those times? A. No. Q. The car was able to proceed on west? A. Yes. Q. No instance in which she turned around on the pavement or slipped over on the opposite side of the pavement until you came

to the place of the accident, is that true? A. No. Q. The car acted up to the point of the accident like a car on a slippery road? A. Yes. Q. But was going along all right? A. Yes, until she lost control. Q. The time she lost control was at the place it was extra muddy? A. Yes, sir. Q. And when she hit it the car skidded and went over in the ditch? A. Yes, sir. Q. That was the worst muddy spot you saw all the way? A. I don't remember. Q. So far as you know that was the worst of all? A. I don't remember that.' Mr. Moyer: Plaintiff objects to the offer for the reason it is incompetent, irrelevant and immaterial, the deposition itself being the best evidence. Sustained. Defendant excepts."

This question was also asked Mr. Powers and the following record then made: "Q. Will you refresh your memory and state whether or not at the time her deposition was taken in this case the following question was propounded to Mrs. Brown—

"Mr. Moyer: I am going to object to the reading of any portion of this deposition at this juncture of the trial as an effort to impeach the testimony of the plaintiff collaterally, incompetent, irrelevant and immaterial, the deposition itself being the best evidence. It is an attempt to collaterally impeach this woman whom he had on the stand yesterday and while there he had full opportunity to examine her with reference to her deposition.

"Mr. Deutsch: I would like to be heard on that, Your Honor, I have been through this a lot of times.

"The Court: The deposition is merely for impeachment. The foundation was laid and it may now be offered for that purpose and that purpose only.

"Mr. Deutsch: We are not offering the deposition. It is not admissible where she is in the courtroom.

"The Court: It would not be admitted for the purpose of admissions."

And, again: "Mr. Moyer: Plaintiff objects to the reading of any portion of this deposition at this juncture as incompetent, irrelevant and immaterial, the deposition itself being the best evidence.

"The Court: The Court sustains the objection for the reason that such questions and answers are statements that appear in the deposition and may be used as impeachment of the witness; they are not admissible as declarations against interest, voluntarily made; that such statements were made at a time when the witness was under compulsion in the form of taking of a deposition and not being voluntary statements made by herself. ' Defendant excepts."

In the case of *Megason v. Boleyn Lumber Co.*, 140 La. 431, 73 So. 257, defendant propounded interrogatories to plaintiff, who answered that he and his brother had derived title to land by inheritance from their father, and had not purchased it, and had not paid a cent for it, and did not at that time have any money with which to have purchased it. Later he testified that when so answering he was under the impression that the questions had been asked by his own lawyer instead of the opposing lawyer, and said that his testimony was all wrong, and that they paid $1,000 for the property. He sought to mend his hold by saying that his former testimony had been given thoughtlessly, and the court held: "The admission on the part of James C. Megason that he did not purchase the property, and did not pay anything for it, but acquired it by inheritance, makes out defendant's case fully, and is binding upon him, we think, and cannot be withdrawn to the prejudice of defendant."

In 22 C. J. 342, it is said: "A deposition is competent, although it was made in a personal capacity and is offered against the party in a representative capacity; although it was taken *in perpetuam* or *de bene esse;* although it was taken on insufficient notice, or without the statutory formalities; although it was not filed as required by statute; although the cause for taking it no longer exists; or even though the deposition itself has been ·suppressed. * * * The party making the statement or admission is entitled to have the entire deposition read, or at least as much of it as has any bearing on the matter."

"A witness may be impeached by showing that he made statements out of court contrary to those made in court in regard to some matters relevant to the issue. * * * Such declarations are not substantive evidence of the fact declared, unless made against interest by one who is a party to the record. * * * To lay the foundation for such testimony the attention of the witness should be directed, with reasonable certainty, to the time, place and circumstances of making the declarations, so that he may refresh his recollection and reconcile, if he can, his declarations with his evidence." *Zimmerman v. Kearney County Bank,* 59 Neb. 23, 80 N. W. 54.

In *Sindelar v. Hord Grain Co.,* 116 Neb. 776, 219 N. W. 145, it was held that a witness may be impeached by evidence tending to prove that he made statements out of court contrary to those made by him at the trial in respect to matters material to the issues. It is stated that such impeaching declarations are not substantive evidence when made by one *not a party* to the action.

In *Luikart v. Korbmaker,* 128 Neb. 199, 258 N. W. 263, an action founded upon a creditor's bill, the plaintiff offered as part of his case in chief questions and answers taken in proceedings in aid of execution. Objections to this evidence were sustained, and this ruling was assigned as error.

"Plaintiff contends that the admissions are primary evidence, and that it is immaterial that the party who made them is present in court and can be called as a witness. The rule in reference to this has been well stated by this court to be: 'The admissions and declarations of a party to an action against his own interest, upon a material matter, are admissible against him as original evidence, and, where he is examined as a witness in his own behalf, it is unnecessary to lay a foundation for the admission of such evidence by cross-examination.' *Young v. Kinney,* 79 Neb. 421.

"We are of the opinion that, in sustaining the objections to the introduction of this evidence, the trial court committed prejudicial error. *Merrill v. Leisenring,* 166 Mich.

219; *Berggren v. Hannan, O'Dell & Van Brunt,* 116 Neb. 18; 22 C. J. 297; 22 C. J. 343, which hold clearly that it is immaterial that the party who made the admission is present in court."

In *Falkinburg v. Inter-State Business Men's Accident Co.,* 132 Neb. 670, 272 N. W. 924, it was held by this court that "A statement made by a party to an action as to any fact in issue unfavorable to the conclusion contended for by such party is relevant, and may be introduced in evidence as an admission against interest," and that such an admission upon a material matter is admissible against the plaintiff as original evidence, and held that it was proper to permit the notary public and shorthand reporter, who had his original notes in court, to testify as to the questions and answers made by the plaintiff in the deposition which he had taken. See, also, *German Nat. Bank of Hastings v. Leonard,* 40 Neb. 676, 59 N. W. 107; *Lowe v. Vaughan,* 48 Neb. 651, 67 N. W. 464; *Carlson & Hanson v. Holm,* 2 Neb. (Unof.) 38, 95 N. W. 1125; *Young v. Kinney,* 79 Neb. 421, 112 N. W. 558; *Gentry v. Burge,* 129 Neb. 493, 261 N. W. 854.

In an action for personal injuries in an automobile accident, it was held that the trial court erred in excluding testimony of a witness that plaintiff had testified a few days after the accident that he was not much hurt but thought he ought to have a little settlement, and the court held that "declarations and admissions of a party to an action, against his own interest, upon a material matter, are admissible against him as original evidence." *Havlik v. Anderson,* 130 Neb. 94, 264 N. W. 146.

In the case at bar, the defendant was entitled to reasonable scope in showing that plaintiff's answers in the trial are inconsistent with those given months previously in her deposition, when the evidence relates to material matters.

The defendant had a right to introduce the evidence of the shorthand reporter who took the deposition, to show the jury the exact difference between plaintiff's answers on the two occasions as substantive evidence in his own

behalf. In several of the rulings the court was clearly wrong, and this was prejudicial to the rights of the defendant, for it is reversible error to unduly restrict the right of cross-examination. *Larson v. Hafer,* 105 Neb. 257, 179 N. W. 1013; *Goldman v. State,* 128 Neb. 684, 260 N. W. 373. It has also been held that no offer of proof is necessary in order to review a ruling upon cross-examination. *Laux v. Batterman,* 135 Neb. 386, 281 N. W. 799; *Powell v. Morrill,* 83 Neb. 119, 119 N. W. 9.

When the plaintiff had rested her case, the defendant moved the court for a directed verdict, for the following reasons: (1) The evidence of plaintiff wholly fails to show that the defendant, or defendant's wife, was guilty of gross negligence as defined by the decisions in this state in the operation of the automobile at the time of the accident; (2) that the evidence fails to show even ordinary negligence in the operation of this car, but merely presents a case of a sudden emergency that arose; (3) the evidence shows that plaintiff had her eyes upon the road, that it was a dark night, that she was unable to see the condition within sufficient time to make an outcry, and hence there was no greater duty upon the driver of the car to observe this unusual condition of the hillside; (4) the evidence of plaintiff is wholly insufficient to sustain a verdict for plaintiff and against the defendant; which motion was overruled, to which the defendant duly excepted.

In 1931 the legislature enacted a new law, section 39-1129, Comp. St. Supp. 1939, the first sentence of which reads as follows: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of said motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle." The first requirement, that the driver was under the influence of intoxicating liquor or the guest cannot recover, does not apply to this case. The only other

condition under which the car owner can be held liable in an action by a guest is because of gross negligence.

We will now consider some Nebraska cases involving gross negligence. In *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96, this court said in the text: "We are of the opinion that in adopting the guest act the legislature used the term 'gross negligence' as indicating a degree of negligence. Negligence may be slight, ordinary, or gross. Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It may be said that it indicates the absence of even slight care in the performance of a duty, and such, we think, is the meaning intended by the legislature." See, also, *Heesacker v. Bosted,* 131 Neb. 42, 267 N. W. 177; *Belik v. Warsocki,* 126 Neb. 560, 253 N. W. 689; 15 Neb. Law Bulletin, 318; *Thurston v. Carrigan,* 127 Neb. 625, 256 N. W. 39; *Munsell v. Gardner,* 136 Neb. 214, 285 N. W. 555; *Mierendorf v. Saalfeld,* 138 Neb. 876, 295 N. W. 901.

In the case at bar, mature women made a trip to Fremont. The car was in good condition. A heavy rain took place in the afternoon, and the concrete highway was wet, and a little rain was still falling on a dark night. They safely reached a point within three miles of home, and were proceeding downhill at perhaps 40 miles an hour when they suddenly struck a windrow of mud, which reached across the pavement, and the car skidded and upset. The plaintiff was looking ahead carefully, but admits she did not see this mud until it was too late to warn the driver. It has been said: "Such skidding is not an occurrence of such uncommon or unusual character that, unexplained, it furnishes evidence of the driver's negligence." 5 Am. Jur. 654, sec. 273. See *Oakes v. Gregory,* 133 Neb. 407, 275 N. W. 607.

The failure of the driver of the car to anticipate, with her knowledge of the conditions, that there might possibly be sufficient slippery mud to cause the car to skid off the pavement cannot be said to have been such indifference to safety as amounted to a higher degree of negligence than

want of ordinary care. *Amerine v. O'Neal,* 136 Neb. 642, 287 N. W. 56; *Lemon v. Hoffmark,* 132 Neb. 421, 272 N. W. 214.

In *Johnk v. Scanlon,* 136 Neb. 187, 285 N. W. 488, it was said: "When evidence in a guest case is resolved most favorably toward the existence of gross negligence, and a fixed state of facts thus obtained, the question whether such facts will sustain a finding of the existence of gross negligence is a question of law."

After a careful study of the facts, and an examination of many cases cited, we have reached the conclusion that under the law the plaintiff has not proved a case of gross negligence, and that the motion of the defendant for a directed verdict should have been sustained. It is therefore the order of this court that the judgment of the district court be set aside and reversed and the action dismissed.

REVERSED AND DISMISSED.