JOHN L. KOUTSKY, APPELLANT, V. HERMAN J. GRABOWSKI ET AL., APPELLEES.
34 N. W. 2d 893

Filed December 10, 1948. No. 32479.

*Pilcher & Haney* and *Hevelone & McCown,* for appellant.

*Hubka & Hubka,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action at law to recover damages for personal injuries sustained by the plaintiff and property damage to his automobile, arising out of a collision on a highway between such automobile and a truck.

At the time of the accident which occurred about 9:15 a. m., on October 11, 1947, the plaintiff was the owner of a 1946 Oldsmobile 'sedan. The defendant Herman J. Grabowski was the owner of a 1947 Dodge ton-and-one-half truck with a standard body about 13 feet in length, an over-all measurement from front bumper to the rear end of 23 feet, and equipped with an endgate. His son, Howard L. Grabowski, age 18 years, was driving the truck with his father's permission. The truck was loaded with ensilage, making the total weight of the truck and its contents eight tons.

The plaintiff's petition, insofar as it need be considered in this appeal, alleged that on the day in question he was driving west on highway No. 3, which is an oil mat, south and west of Beatrice, Nebraska, between that city and Fairbury, Nebraska. While proceeding in such manner and endeavoring to pass the defendant's truck which was going in the same direction, the truck driver, without warning or signaling, swerved from the right, or north, side of the highway to the south side thereof and into the plaintiff's automobile causing injuries to the plaintiff and damage to the automobile. The petition further set forth acts of negligence on the part of the truck driver in maneuvering the truck as hereinbefore described, which need not be detailed.

The answer of the defendants was in effect a general denial of any negligence on the part of the truck driver. The answer further set forth certain alleged acts of negligence on the part of the plaintiff which constituted the

direct and proximate cause of the accident and damages to the defendant's truck. Defendants, by their cross-petitions, set forth that the plaintiff's negligence caused personal injuries to the truck driver and damage to the truck.

The plaintiff's reply to the defendants' answer was a general denial, and his answer to the defendants' cross-petitions was, in effect, also a general denial.

The case was submitted to a jury, resulting in a verdict for the defendants and a judgment in favor of the defendant owner of the truck for damages thereto. Upon the overruling of the motion for new trial, plaintiff appeals.

For convenience, the appellant will be referred to as the plaintiff, and the appellees as defendants; the defendant Howard L. Grabowski will be referred to as the truck driver when occasion requires.

The plaintiff's testimony is to the effect that he and a companion arrived in Beatrice about 8 a. m., to transact business. After completing their mission they left for Fairbury about 9 a. m. After rounding a curve and before getting onto a straightaway on highway No. 3, the plaintiff drove up behind the defendant's truck and followed it a distance of approximately 200 feet at a rate of speed of 25 miles per hour. He then pulled over to the left, or south side of the highway, so that his vision would not be obscured by the truck, and saw no cars approaching from the opposite direction. He stepped on the gas increasing his speed to about 40 miles per hour, and sounded his horn to pass the truck. At this time the front end of his car was about two car lengths behind the truck, or a distance of approximately 34 feet. The truck was still proceeding west on the north side of the highway. The first the plaintiff knew about the accident was when the truck pulled from the north side of the highway across the center and into the south side thereof and struck his automobile. He did not apply his brakes at any time, and observed no signaling on the part of the

truck driver indicating a left turn. The impact caused his car to be knocked to the south, off the highway and against an embankment near a railroad track running east and west, the car facing in a southwest direction. He observed no lane or road running to the south in that locality. The accident, according to his version, occurred 30 or 40 feet east of a dirt road.

It might be said at this time that there is a dirt road running south from highway No. 3 to a county graveled road, and through the farm of one Claassen, which the defendants take to get to their home. This is the road that is in question in this litigation.

The plaintiff's companion corroborated this evidence in detail, and further testified that the truck driver was asked why he failed to signal to indicate a left turn, and that the truck driver indicated that rear-vision mirrors of the kind on the truck were not much account. The truck driver denied making any such statement.

The truck driver testified that he had been driving trucks four or five years; that the truck in question was equipped with a rear-vision mirror 4 inches in diameter extending from the left side of the left door several inches; and that the truck had an endgate which was not more than an inch wider on each side than the body of the truck, which was 8 feet in width. The plaintiff's testimony was to the effect that this was a home-made endgate which protruded beyond the body of the truck 2 inches on each side thereof and which obscured his vision so that he could not have observed a signal indicating a turn to the left.

The truck driver testified that he proceeded west on highway No. 3 after getting a load of ensilage, at a speed of from 20 to 25 miles per hour, for the purpose of taking the load to his father's farm. About 100 feet east of the point of collision, which is claimed by the truck driver to be where he turned the truck south with the front end thereof over the pavement as distinguished from where the plaintiff claimed the collision occurred, which was

30 or 40 feet to the east of the dirt road hereinbefore described, he signaled a left turn, sliding over to the left door of the truck to make the signal, and that 8 or 10 inches of his left hand extended beyond the box of the truck. He kept his hand in this position until immediately before the collision occurred. When 30 or 40 feet east of the dirt road, he shifted the truck into low gear attempting to negotiate the turn to the left at a speed of from five to seven miles per hour, making the shift in gears to more efficiently carry the load over a grade which proceeds over the railroad tracks south of the dirt road. When he was 100 feet east of the dirt road he could see through the rear-vision mirror a distance of 300 feet in that direction. He testified that he watched at all times and saw no cars in sight, made the hand signal indicating a left turn, and kept the truck gradually moving to the left, or south. When he first saw the plaintiff's car the truck was just ready to go off the south edge of the pavement onto the dirt road. Plaintiff's car at that time was 50 to 60 feet east of the dirt road on the south side of the highway. As the truck driver looked through the rear-vision mirror, according to his testimony, for a period of two seconds he observed the plaintiff's car approaching from the east, and estimated its speed at 70 miles per hour just before and at the time the collision occurred.

It appears from the record that the front end of the plaintiff's car was caved in sideways, the grille and the fender on the right side were damaged, and that the left side of the box of the truck struck the doorpost on the right side of the plaintiff's car, indicating the point of contact between the vehicles. The left side of the truck was damaged, that is, the fender. Apparently the front part of the truck was not damaged by the collision. The amount of damage to both vehicles is testified to and indicated by exhibits in evidence, which need not be set forth.

The sheriff arrived shortly after the accident, and testi-

fied that he found the plaintiff's car on the south side of the highway headed west at an angle, off of the pavement; the truck was across the ditch to the north, off the pavement headed northwest, and against a fence post. The truck, after the collision occurred, was standing a distance of 105 feet from the center of the dirt road leading south. The plaintiff's car was 45 feet southwest of such point. This testimony is corroborated by the truck driver and by the witness Claassen who lives north of the highway at this point and owns land south thereof through which the dirt road runs to the graveled county road south.

The testimony discloses that for more than 13 or 14 years, before and after highway No. 3 was constructed, the dirt road to the south had been used by the defendants, by neighbors, by mailmen, milkmen, and gravel trucks and, in fact, by anyone who desired to use it for vehicular travel.

Certain tests were made by the sheriff and observed by the plaintiff, as to whether or not the truck driver's hand or arm could be seen in indicating a left turn, due to the width of the endgate which is a part of the truck. This test and observation varies as to how much of the truck driver's hand and arm could be seen; the sheriff testified 8 to 10 inches to the wrist and the plaintiff testified not more than 4 or 5 inches, or the palm of the hand.

We deem a recitation of other facts unnecessary in the determination of this appeal.

The foregoing constitutes the relevant and material evidence submitted to the jury.

The plaintiff contends the court committed prejudicial error in instructing the jury that the roadway to the south was a highway and that the place where it formed a junction with highway No. 3, on which the parties were traveling, constituted an intersection within the meaning of the law.

Section 39-741, R. S. 1943, provides in part as follows: "(5) The term 'highway' includes every way or place

of whatever nature open to the use of the public, as a matter of right, for the purposes of vehicular travel, but shall not be deemed to include a roadway or driveway upon grounds owned by private persons, colleges, universities or other institutions. (6) The term 'private road or driveway' includes every road or driveway not open to the use of the public for purposes of vehicular travel. (7) The term 'intersection' includes the area embraced within the prolongation of the lateral curb lines or, if none, then the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other."

In Nygaard v. Stull, 146 Neb. 736, 21 N. W. 2d 595, this court said: "The rules of the road fixed by section 39-741, R. S. 1943, extend to all public highways, however created, and to all roads not public highways if used for travel by the public."

In view of the holding in the cited case, the court did not err in instructing the jury on this phase of the case. The joinder of the dirt road with highway No. 3 and the graveled road to the south constitutes an intersection within the meaning of section 39-741, R. S. 1943. Nygaard v. Stull, *supra*.

The plaintiff contends that the court committed prejudicial error in permitting the defendant Howard L. Grabowski to give his opinion as to the speed of the plaintiff's automobile, citing in support of this contention Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673; Knoche v. Pease Grain & Seed Co., 134 Neb. 130, 277 N. W. 798; Mierendorf v. Saalfeld, 138 Neb. 876, 295 N. W. 901; Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499; and Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315.

The foregoing cases have held evidence of speed to be inadmissible where the witness had no reasonable time, means, distance, or opportunity to formulate a basis for an opinion as to the speed of a car. In the instant case the record discloses the manner in which the driver of the truck looked through the rear-vision mirror and at

what distance he looked and estimated the speed of the plaintiff's car at 70 miles per hour when it was within 50 feet of the truck. It is the plaintiff's contention that the driver of the truck had made a turn to the south in such manner that his vision in the rear-vision mirror would not reflect the oncoming car at that time, and that he was not in a position to testify as to its speed. There is evidence that he angled to the south to enter the dirt road. The damage to the plaintiff's automobile, as shown by the exhibits, the part of the automobile that came into contact with the truck, the testimony with reference to the size, weight, and load of the truck and the manner in which it was pushed across the highway in a northwesterly direction, are all matters to be taken into consideration with reference to the speed of the oncoming car.

In Carnes v. DeKlotz, 137 Neb. 787, 291 N. W. 490, this court said: "Where there is other evidence in the record sufficient to sustain the finding by the jury of excessive speed, it is ordinarily not error to permit an eyewitness to estimate the speed of an automobile, although the usual foundational requirements have not been in all respects met."

While it may be that the driver of the truck had no reasonable time, means, distance, or opportunity to formulate a basis for an accurate opinion as to the speed of the plaintiff's car, yet describing what he saw as the car and truck came together would require a cursory estimate of the speed even if no opportunity to accurately estimate it existed. The truck driver in the instant case saw the plaintiff's car coming toward him at a distance of 50 feet, and then felt the force of the impact.

Various factors, such as skid marks, distance traveled after impact, and force of impact, constitute pertinent evidence in arriving at an estimate of the rate of speed of an automobile, either by those involved in an accident or those in authority investigating the accident immedi-

ately thereafter. See 5 Am. Jur., Automobiles, § 630, p. 850.

"A witness who has shown himself qualified to give an opinion as to the speed of a moving automobile may express an opinion as to the speed a car is moving, although the same be coming directly toward him, such fact not affecting the competency of his testimony but rather the weight to be given the same." Lewis v. Miller, 119 Neb. 765, 230 N. W. 769, 70 A. L. R. 532.

The accuracy of such an estimate or opinion is open to question but, being admissible as evidence, the determination is for the jury and not the court.

In the final analysis, this evidence resolves itself into the sufficiency thereof to sustain a verdict, rather than the competency of the witness to testify. We believe that, in view of the testimony with reference to speed and the physical facts as testified to by the witnesses, the trial court did not err in submitting this issue to the jury. The factual situations in the cases cited by the plaintiff with reference to speed are distinguishable, and need no further discussion.

Other assignments of error are without merit and need not be discussed.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.