CLYDE CUNNING, APPELLANT, V. GEORGE KNOTT, APPELLEE.

59 N. W. 2d 180

Filed June 12, 1953.   Nos. 33315-33318.

*William S. Padley,* for appellant.

*Edward E. Carr* and *Smith Brothers,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for damages.

Plaintiff, a guest, was riding in an automobile driven by the defendant when the accident happened. The cause was tried to a jury. At the close of plaintiff's case-in-chief defendant moved for a directed verdict on the ground, among others, that gross negligence was not proven. The motion was denied. This motion was renewed at the close of all the evidence. The motion was denied. The court submitted the issue of gross negligence to the jury, resulting in a verdict and judgment for the plaintiff. Defendant then moved for judgment notwithstanding the verdict for the reason, among others, that gross negligence was not proven. That motion was denied. Defendant then moved for a new trial. That motion was granted, the court finding error in instructions given.

Plaintiff appeals, assigning error in the granting of a new trial. Defendant cross-appeals, assigning error in denying his motion for judgment notwithstanding the verdict. We determine the cross-appeal. We find that the court erred in denying the motions for a directed verdict and in denying the motion for judgment notwithstanding the verdict. We reverse and remand with directions to render judgment for defendant.

We summarize the evidence in accord with the rule that: "A motion for directed verdict or its equivalent must, for purpose of decision thereon, be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Davis v. Spindler, 156 Neb. 276, 56 N. W. 2d 107.

The defendant was the operator of a beer parlor at Gothenburg. He desired to promote shuffleboard games. For that purpose he determined to go to Eustis and Farnam. Defendant did not know the road. Plaintiff did. Defendant and plaintiff left Gothenburg during the mid-morning of January 25, 1951. Before leaving Gothenburg the defendant purchased a one-half pint bottle of whiskey. On the road to Eustis the two men had a drink of whiskey from this bottle, consuming about one-third of it. They arrived at Eustis about 11:30 a. m. to 12 noon. They had lunch, remained there one and a half or two hours, during which time each of them drank four or five bottles of beer.

They then drove to Farnam where they remained an hour to an hour and a half during which time each of them drank five or six glasses of beer from 8-oz. glasses. In company with a third party they drove a short distance into the country where each of them drank a coke spiked with whiskey. After that there was about a third of the half pint left in the bottle of whiskey. They returned to Farnam, where the third party left the car. Plaintiff and defendant then drove north of Farnam, on a country road, came to a dead end, turned east, and drove to the scene of the accident which occurred about 4 p. m.

At all times the weather was clear and the road dry. The distances between the points mentioned do not ap-

pear in the record. The accident occurred about 11 miles south of Gothenburg.

Plaintiff testified that the speed of the defendant was "fast" and between 60 to 70 miles per hour for the entire trip. Two witnesses estimated defendant's speed at the time of the accident at 70 to 80 miles per hour.

At Farnam the parties showed signs of having "had something to drink," but not "excessive." They "walked and talked" all right. The evidence is that defendant drove rapidly but well at all times prior to the accident, did not show the effects of having consumed intoxicating liquor so far as his driving was concerned, had the automobile under control, and appeared to know what he was doing.

The accident occurred at the intersection of the west-to-east dirt road, on which they were traveling, with a graveled state highway. The country road came to a "dead end" at almost the apex of a curve in the state highway. On the east side of the road there was a bank of earth about 3 feet above the ditch and about on the level of the state highway. This bank was some 35 feet long, and at either side led down to a canyon on the land to the east. Sixty feet west of the bank, on the west side of the highway, and on the south side of the road was a "Stop" sign facing to the west. For 100 feet to the west of the bank the road to the west was on a slight incline and from there it was downhill for about 1,200 feet, a drop in elevation in that distance of about 88 feet. From there west there was another hill of about the same elevation.

Coming from the west the stop sign was visible for 400 feet, although obscured by weeds. It became more readily visible as one came closer to it. Defendant did not see the stop sign. A car was coming from the north on the highway. Parties in that car saw defendant's car as it was "coming up over the hill." Defendant did not see that car.

When defendant reached a point that he saw the road

ended, he put on his brakes, and skidded for 120 feet in almost a straight line. Defendant's car hit the bank with sufficient force to cause it to rise up on its front end, and then drop back on its wheels. The car was demolished. Plaintiff was seriously injured. The defendant did not know of the location of this intersection. Nothing on the trip caused plaintiff concern or alarm until defendant put on his brakes. The plaintiff looked up and saw what was going to happen. He put his arms up to shield his face.

The rate of speed testified to by plaintiff's witness was not lawful under the provisions of section 39-7,108, R. R. S. 1943. Section 39-729, R. R. S. 1943, provides that all vehicles entering or crossing highways where stop signs are erected shall come to a full stop as near the right-of-way line as possible. Violations of these statutory provisions are evidence of negligence. Tempero v. Adams, 153 Neb. 331, 44 N. W. 2d 604.

There is no contention here that defendant was driving under the influence of intoxicating liquor within the meaning of section 39-740, R. R. S. 1943. The evidence as to his drinking intoxicants, however, is a circumstance to be considered in determining whether defendant was guilty of gross negligence. See Howard v. Gerjevic, 128 Neb. 795, 260 N. W. 273.

We have then these ultimate facts to be considered as established for the purposes here. Defendant, after having consumed intoxicating liquor, drove his car in the daytime at an illegal and negligent rate of speed over the crest of a hill on a country road where he was unable to see what was ahead on the other side in time to avoid an accident, and in doing so did not see nor comply with the mandate of a stop sign. Does that constitute gross negligence under section 39-740, R. R. S. 1943, for which the defendant is liable for damages caused?

The rules are: "When evidence in a guest case is resolved most favorably toward the existence of gross negligence, and a fixed state of facts thus obtained, the

question whether such facts will sustain a finding of the existence of gross negligence is a question of law." Johnk v. Scanlon, 136 Neb. 187, 285 N. W. 488. See, also, Brown v. Mulready, 140 Neb. 500, 300 N. W. 421.

"The burden of proof is upon a guest, riding in an automobile by invitation, to prove by a preponderance of the evidence, if he seeks to hold the owner or operator thereof liable for damages, that such owner or operator was guilty of gross negligence. Failure to so prove, or the fact that the operator of the automobile may have been guilty of ordinary negligence, is insufficient to warrant a recovery in favor of the guest." James v. Krebek, 142 Neb. 757, 7 N. W. 2d 637.

"Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It indicates the absence of even slight care in the performance of a duty." Komma v. Kreifels, 144 Neb. 745, 14 N. W. 2d 591.

"What amounts to gross negligence in any given case must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence." Komma v. Kreifels, *supra*. See, also, Johnson v. Jastram, 155 Neb. 376, 52 N. W. 2d 245.

"* * * a series of acts of ordinary negligence may, under certain circumstances, operate to produce gross negligence but not necessarily so." Pavlicek v. Cacak, 155 Neb. 454, 52 N. W. 2d 310.

Excessive speed of a vehicle does not necessarily establish gross negligence, although it is a factor to be considered. 60 C. J. S., Motor Vehicles, § 404, p. 1030.

"* *" it is not necessary in all cases that the operator of a car be aware of impending danger in order to hold him guilty of gross negligence, but that is a circumstance which should be considered." Thurston v. Carrigan, 127 Neb. 625, 256 N. W. 39.

As we weigh this evidence, under these rules, it did not rise to the degree of gross negligence and was not

sufficient to submit the issue of gross negligence to the jury.

It follows that the court erred in overruling the several motions for a directed verdict and in denying the motion for judgment notwithstanding the verdict. The judgment is reversed and the cause remanded with directions to render judgment for the defendant.

REVERSED AND REMANDED WITH DIRECTIONS.