HERBERT LEWIS, JR., APPELLEE, v. LOUIS H. MILLER, APPELLANT.

FILED MAY 16, 1930. No. 27119.

*Crofoot, Fraser, Connolly & Stryker* and *James T. English,* for appellant.

*Leon & White, contra.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON and DAY, JJ., and FITZGERALD and LOVEL S. HASTINGS, District Judges.

HASTINGS, District Judge.

This is an action by Herbert Lewis, Jr., a minor, nineteen years of age, by his father as next friend, to recover damages on account of injuries received in an automobile collision between an automobile in which plaintiff, appellee, was riding as a passenger and an automobile owned and

driven by defendant, appellant, Louis H. Miller. The jury returned a verdict in favor of plaintiff in the sum of $5,500. A remittitur was ordered by the trial court of $1,500. The remittitur was made and judgment was entered for $4,000. Defendant appeals therefrom, and plaintiff prosecutes a cross-appeal to restore the $1,500 ordered remitted.

One of the principal grounds of error urged by counsel for defendant is the giving of instructions Nos. 1 and 4 by the trial court upon its own motion. Instruction No. 1 complained of sets out five acts of negligence alleged by plaintiff in his petition. By instruction No. 4 the jury were instructed that it was necessary for the plaintiff, before he could recover, to establish by a preponderance of the evidence that negligence on the part of the defendant in some one or more of the particulars set forth in plaintiff's petition, or that the negligence on the part of the defendant in some one or more of the particulars set forth in plaintiff's petition concurring with the negligence on the part of the driver of the automobile in which the plaintiff was riding at the time of the collision, was the proximate cause of the collision between said automobiles.

The particular complaint made against these instructions is that the trial court submitted certain alleged acts of negligence on the part of the defendant which found no support in the evidence. The particular acts of negligence complained of, submitted by said instructions, are:

"That the defendant's view of vehicles was obstructed by reason of the fact that there were three other occupants besides himself in his automobile, making it impossible for defendant to see approaching automobiles coming from the south toward the north."

"That the defendant's automobile was equipped with defective brake lining and braking appliances at the time of said collision."

A proper consideration of this question and other alleged errors requires an examination of the evidence. There is little conflict in the evidence. The collision complained of occurred on the 24th day of June, 1928, at about 7:30 p. m., on Pacific street a short distance west of the private drive-

way leading from the grounds of the Highland Country Club in Douglas county. Pacific street, on which the collision occurred, is a graveled highway 34.5 feet in width from shoulder to shoulder and runs east and west. The driveway from the club grounds intersects Pacific street nearly at right angles, and is about 40 feet in width at the intersection. West of the north end of the driveway, on Pacific street, there rises a hill, the top or crest being 300 feet west of the intersection. The hill in question obstructs the view from the east beyond the crest. From the top of the hill there is a decline to the north end of the driveway. From the north end of the driveway, where the same connects with Pacific street, there is a clear view westward to the top of the hill, and also a clear view along said street eastward from the top of the hill to where the driveway connects therewith. There was some shrubbery along the west side of said driveway which extended nearly to the intersection, which, to some extent, obscured the view of said driveway from persons coming east along Pacific street. However, an automobile might be seen, by those traveling eastward along Pacific street, as it emerged from the driveway and before entering upon Pacific street. The automobile in which plaintiff was riding was a Chevrolet coach occupied by five persons. The plaintiff occupied the front seat with one Boyer, the driver of the car; the other three persons occupied the back seat. The defendant, at the time of the collision, was driving an Oldsmobile coupé, occupied by three persons other than defendant; one of the persons being seated upon the lap of another. The car in which plaintiff was a passenger traveled north from the club house and, at a point where a clear view might be had of Pacific street to the east and to the west, the car was stopped and the driver of the car and a passenger, Linwood Hall, looked both to the east and west to ascertain if there was any vehicle upon the street that might interfere with entering upon said street. Seeing none the driver of the car put the car in first gear and proceeded to enter upon said street, driving the car to the north at a speed of about five or six miles an hour. When in about the mid-

dle of the street, the driver and one Hall, an occupant of the car, looked to the westward and saw the automobile of defendant coming over the top of the hill. The plaintiff did not see the car driven by defendant until it was about 150 feet from them. The car in which plaintiff was riding proceeded very slowly from that point in a northwesterly direction on the north side of the center of the street, and at the time of the collision was almost stopped. When the car driven by defendant was first observed it was north of the center of the street and it remained upon the wrong side of said street until a very short distance from the other automobile, when it swerved further to the left and then back to the right, striking the car in which plaintiff was riding upon the left side near the door and shoving it about 35 feet to the east and a little to the north into the ditch on the north side of the street. The evidence on behalf of plaintiff is that defendant's car was being driven at an estimated speed of from 50 to 60 miles an hour at and just prior to the collision. Defendant estimated the speed of his car at the top of the hill as from 35 to 40 miles an hour, and says that he did not slacken his speed or retard his motor up to the point of the collision, although he was going down grade and his speed must have increased on account thereof. He also testified that, from the top of the hill to a point about 50 or 75 feet west of where the collision took place, he traveled partly to the north of the center of the street and at that point his attention was called to the other car, which, he says, he had not seen before on account of his looking down at the road. He says that when his attention was called to the other car it was about in the middle of the street and moving slowly; that he attempted to apply his brakes and go around in front of the car by going further north and, realizing he could not do so, he turned his car to the right and the collision took place; that when the collision took place the other car was headed in a northwesterly direction and the left front part of his car struck the other about the middle of the left side. The evidence further discloses that immediately following the collision the defendant told a man that his

"brakes would not hold," and that some five months after the accident the defendant told another "if his brakes had been in good condition the accident would never have happened." The defendant does not deny he made such statements. The foregoing admissions of defendant, coupled with the fact that when he applied his brakes the speed of his car was not slackened or retarded thereby, warranted the jury in finding the braking appliances on his car must have been defective.

The case of *Yarbrough v. Carlson,* 102 Or. 422, is directly in point upon the question presented. In that case plaintiff introduced evidence to show the speed at which defendant was driving both before and at the time of the collision; the manner of his operation of the car at the time; the distance that plaintiff was dragged or propelled along the street before defendant stopped, also that after the collision defendant stated that he had defective brakes and could not avoid the collision. The defendant in that case requested the court to direct the jury that the plaintiff failed to introduce any competent evidence to prove that the brakes on his automobile were defective. This was refused and the court held:

"In an action for injury from a collision with an automobile, in which plaintiff alleged that defendant's automobile was equipped with weak and defective brakes, evidence held sufficient for the jury."

The evidence in this case justified the submission of the allegation of negligence that the brakes on the defendant's car were defective.

There is no evidence from which it might be inferred that defendant's view was obstructed by reason of there being three other occupants beside himself in his automobile so that in driving east he could not see cars coming from the south out of the private driveway. This particular claim of negligence on the part of the defendant should not have been submitted to the jury. The rule is:

"In stating the issues of fact in its charge to the jury, the court should submit to the jury only such issues as are presented by the pleadings and are in controversy, and

which find some support in the evidence." *Koehn v. City of Hastings,* 114 Neb. 106.

The submission of this act of alleged negligence could not operate to the prejudice of the defendant, unless it can be said, from a consideration of all the evidence, it might have misled the jury, and induced them to return a verdict that, otherwise, they would not have returned. The evidence is ample to warrant the finding that defendant was guilty of the other negligent acts alleged in the petition and submitted to the jury for its consideration, and that one or more of such negligent acts which, alone or concurring with negligence of the driver of the car in which plaintiff was riding, was the proximate cause of the collision and consequent injury to plaintiff. Under the evidence the jury would not have been justified in finding otherwise. Plaintiff was a passenger in the car in which he was riding. He had nothing to do with its operation or control, and there is no evidence upon which the jury could find that he was guilty of contributory negligence. Under the evidence in this case, the submission of the act of alleged negligence complained of could not have misled the jury to the prejudice of the defendant.

The refusal to give instructions Nos. 1 and 3 requested by defendant is assigned as error. Instruction No. 1 relates to the duty of a driver of an automobile entering a public highway from a private driveway. The requested instruction was fully covered by instructions given by the court upon its own motion.

Instruction No. 3, requested and refused, was to the effect that, if the jury believed from the evidence that the accident in question and the resulting damage to plaintiff was caused solely by the negligence of the driver of the car in which plaintiff was riding, he could not recover. The requested instruction was not supported by the evidence. The evidence would not have warranted the jury in finding that the accident in question was caused solely by the negligence of the driver of the car in which plaintiff was riding. Error was not committed in the refusal to give the instructions requested by defendant.

It is urged by counsel for the defendant that it was error to permit two witnesses for the plaintiff to testify as to the speed of defendant's automobile just prior to the time of the collision, as it was coming directly toward them, and they had no opportunity to compare its speed with objects which it was passing. Counsel cite no authority in support of their contention. The witnesses were the driver of the car in which plaintiff was riding at the time of the collision and Linwood Hall, a passenger in the car at that time. Both testified that they had driven cars for several years, had occasion to note the speed of different cars, either passing or coming toward them, and that they were able to estimate the speed of the automobile driven by the defendant. It further appears from the evidence that the two witnesses were familiar with the street in question and had driven over it in going to and from their work at the country club; that they first saw defendant's automobile as it came over the top of the hill, and observed its speed from then until the collision. They were permitted to give their opinion as to the speed of the automobile when about 100 feet away from them, and they testified that its speed was, at that time, between 50 and 60 miles an hour, and that it did not slacken its speed up to the time of the collision. It is the rule in this state that:

"A witness who sees a moving car, and possesses a knowledge of time and distance, is competent to express an opinion as to the rate of speed at which the car was moving." *Omaha Street R. Co. v. Larson,* 70 Neb. 591; *Pierce v. Lincoln Traction Co.,* 92 Neb. 797; *Andersen v. Omaha & C. B. Street R. Co.,* 116 Neb. 487.

The witnesses were qualified to give their opinion or estimate as to the speed at which defendant's automobile was driven just prior to the collision. The fact that the automobile driven by defendant was coming toward them affected the weight rather than the competency of their testimony. The weight to be given their testimony upon this subject, under all the circumstances proved, was for the jury. *Pierce v. Lincoln Traction Co.,* 92 Neb. 797. See 42 C. J. 1225, sec. 1026; *Owens v. Iowa County,* 186 Ia. 408.

Complaint is made that defendant was not permitted, on cross-examination, to ask the plaintiff in reference to a certain unsigned written statement claimed to have been made to Mr. English, one of the attorneys for the defendant, some 19 days after the accident. A certain part of said statement was read to the witness on cross-examination and the inquiry made as to whether or not he had made such a statement to Mr. English. The trial court suggested the better way would be to show the witness the statement and ask him whether he made the statement and, possibly, offer the statement itself. The defendant then proceeded with the cross-examination of the witness and cross-examined him at length as to whether or not he made certain statements to Mr. English in regard to the accident. The witness was permitted to answer all of such questions and this line of cross-examination was pursued as far as seemed to be desired by counsel for the defendant. An examination of the record shows that the claim of error in this respect is without merit.

Error is claimed on account of a ruling made by the trial court sustaining an objection to the offer of a certain written statement signed by Mrs. Mary Ziskovsky, a passenger in the car of the defendant Miller at the time of the accident. It seems that five days after the accident and while Mrs. Ziskovsky was still in the hospital, in pain, with face cut and her tongue almost severed, Mr. English, one of the attorneys for the defendant and the insurance company, in which defendant carried liability insurance, called on her at the hospital and asked her about the accident. He wrote the statement in his own language. After he had written the statement it was not read by the witness nor does she remember that he read all of it to her. The defendant called her as a witness in his own behalf, inquired of her as to her knowledge of the speed of the defendant's car at the time and tried to qualify her so that she might give an estimate of its speed just before the collision. She was unable to qualify, and was not asked to give her estimate of such speed. It also appears that at the time Mrs. Ziskovsky had a suit pending against the

defendant growing out of the same accident. In the statement offered, Mrs. Ziskovsky is made to say that she judges that the defendant's car was going at 25 miles an hour. There is nothing in the statement that shows that she was qualified to give an estimate of the speed at which the car was traveling. The statement is also replete with conclusions, such as: "Mr. Miller (the defendant) was driving in a careful manner." Also, in speaking of the time that the car of plaintiff came out of the private driveway: "We were so close to it at the time that it was impossible for Mr. Miller to avoid hitting it." Also: "I think that the cause of this accident was the sudden appearance of the Chevrolet car in our path at a time when it was impossible to avoid running into it." Counsel contends that, since the witness was hostile, the defendant was entitled to have her statement admitted in evidence as contradictory of some of her testimony given when called as a witness on behalf of the defendant, and cites *Penhansky v. Drake Realty Construction Co.,* 109 Neb. 120, in support of his contention. In that case this court held:

"Where one has been misled or entrapped into calling a witness by reason of such witness, previous to the trial, having made statements to the party, or his counsel, favorable to the party's contention, and at variance with the testimony given at the trial, and the party believed and relied upon such statements in calling the witness, and is surprised by the testimony on a material point, he may, in the discretion of the court, be permitted to show the contradictory statements made before the trial."

Under the rule announced in that case, when a party calls a witness and is surprised or misled by the testimony of the witness on a material point, it rests in the discretion of the court as to whether he will be permitted to show the contradictory statements made before the trial. As we have pointed out, aside from the conclusions contained in the statement, there is very little in the statement that might be deemed contradictory of the testimony given by the witness when testifying in behalf of the defendant. The conclusions contained in the statement would not have been

admissible in behalf of the defendant had she been a friendly and willing witness and attempted to testify thereto when called as a witness by him. No offer was made of the parts of the statement that purport to state facts and not conclusions. Taking into consideration the time and the circumstances under which the alleged contradictory statements were made, that it was entirely written by the attorney for the defendant and the insurance company, and consisted largely of conclusions and not statements of fact, there was no abuse of discretion on the part of the trial court in sustaining an objection to its admission in evidence.

Counsel for defendant also claim error in the sustaining of objections to the admission of a written statement made by Joe Ziskovsky a short time after the happening of the accident. The statement was taken by the same attorney who took Mrs. Ziskovsky's statement. It appears that Mr. Ziskovsky was a passenger in the car of the defendant at the time of the accident; that he had assigned his claim for damages to his wife, who brought suit against the defendant to recover damages for herself and for damages alleged to have been sustained by him. The defendant called Mr. Ziskovsky as a witness in his own behalf. He was examined at length and he was unable to qualify so as to testify to the speed of defendant's car at or about the time of the accident, nor was he asked to give his opinion as to such speed. The statement offered in evidence contains very little that is contradictory of the testimony of the witness when testifying in behalf of defendant. The only part of such statement that seems to be in any way contradictory of his testimony upon a material point is where he says that before the collision the defendant was driving "on the right-hand side of the road." The record shows that, after the court excluded the entire statement, a portion of the statement was offered and received in evidence. The part of the statement received in evidence was: "Joe Ziskovsky. July 1, 1928, we were returning home on the Pacific street road past the Highland Country Club grounds. We were going east on the right-

hand side of the road." There was no abuse of discretion on the part of the trial court in excluding the remainder of the statement.

It is contended by counsel for defendant that the verdict of $5,500 is so excessive it indicates that it was the result of passion and prejudice. The evidence shows that the plaintiff received severe and permanent injuries to his right hand. He had six tendons cut on the front and inner side of his wrist, also the ulnar nerve and four tendons cut on the back side of the wrist. Plaintiff was on the operating table for two and a half hours while the tendons and the ulnar nerve were sutured. The evidence of the doctor who treated him is that, due to both the severence of the ligaments and the nerve, there is no doubt but that there will be a permanent disability of the hand and wrist. The plaintiff also suffered contusions and bruises over his face and left ear and arm. Plaintiff at the time of the trial was suffering from a paralysis of two fingers of the right hand and had no sensation or feeling in the ulnar side of the ring finger. There is no doubt but what plaintiff suffered considerable pain from his injuries.

The plaintiff, on his cross-appeal, claims that the amount found by the jury should be restored and judgment given him for that amount. From a careful consideration of the evidence in relation to his injuries we do not believe that the verdict of the jury was so excessive as to indicate that it was the result of passion and prejudice. It is not contended by defendant that the amount as fixed by the trial court of $4,000 is excessive and we believe that the judgment for that amount as entered by the trial court should not be interfered with.

The judgment of the trial court should be and is hereby AFFIRMED.