NETTIE L. GERISH, APPELLEE, V. MORRIS P. HINCHEY, APPELLANT.

FILED JULY 1, 1930. No. 27195.

*Crofoot, Fraser, Connolly & Stryker* and *James T. English,* for appellant.

*Benjamin S. Baker* and *Ralph T. Wilson, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and LIGHTNER, District Judge.

LIGHTNER, District Judge.

This is a suit by Dr. Nettie L. Gerish against the defendant, Morris P. Hinchey, on account of an accident

which happened on April 3, 1928, at the intersection of Eighteenth and Binney streets in the city of Omaha. Mrs. Gerish recovered a judgment for $15,000 and defendant brings the case to this court by appeal. Mrs. Gerish was. driving south at the time of the accident and claims that it was her intention to continue on south straight through the intersection to Farnam street. The driver of defendant's truck or laundry wagon was driving west and claims that it was his intention to continue on west, as his next stop was several blocks west of the intersection on the same street. Both Mrs. Gerish and the driver of the truck claim that he or she saw the other automobile when it was back several car lengths from the crossing; and each claims that he or she got into the intersection first. It was a clear morning and the accident happened at about 10:30 o'clock in the morning. Mrs. Gerish's version of the accident is that, after she observed the truck and saw that it was several car lengths from the intersection, she proceeded into the intersection and had got nearly through the same when she heard the noise of brakes being applied and looked back and saw the truck coming toward her and that it almost instantly struck her. The truck driver's version of the accident is that he reached the intersection first and that Mrs. Gerish cut in ahead of him and turned west, that he swerved his car to the left to go around her, and that she immediately turned south directly in front of his truck; that he also attempted to turn, but that it was too late to avoid a collision. The collision seems to have occurred on the southwest corner of the intersection and both vehicles were at the southwest corner of the intersection after the accident. Mrs. Gerish's Ford sedan was within a foot or two of the curb where it was rounded off at the southwest corner of the intersection and the truck, which had struck it at about the front door, was still against the sedan after the collision.

The parties also disagree as to the effects of the collision. Mrs. Gerish claims that the impact was so great that she was thrown from the driver's seat on the left side of her sedan through the right-hand door and out onto the pave-

ment or curb.  And Mrs. Brown, who lives in the fourth house west of the intersection on the south side of the street, testified that she saw her getting up from the pavement and get back into her automobile.  On the other hand, the driver of the truck, the neighbors who lived in the first, second and third houses west of the intersection, the neighbor who lived in the house east of the intersection, and a man who was painting the house east of the intersection, and who was on a scaffold about fifteen feet above the ground where he had an unobstructed view, claim that Mrs. Gerish was not thrown out of her automobile but remained sitting at the driver's seat after the collision.

The witnesses also disagree as to the distance the Ford sedan was pushed by the impact of the collision, one side claiming that the back wheels were skidded sideways not more than a foot or two, and the other side claims that the back wheels were pushed sideways 15 or 16 feet.

It seems to be agreed, however, by all parties that Mrs. Gerish got out of the automobile directly after the accident and spent perhaps an hour or more measuring and going over the ground at the scene of the accident, and then walked home, a distance of two or three blocks.  Most of the witnesses who saw her at that time claim they did not see any blood on her or other indications of injuries and thought that she was not hurt.  It is conceded that Mrs. Gerish called Dr. Dunn on the day of the accident and Dr. Henry within two or three days afterwards and that she entered Lord Lister hospital on April 9, 1928, and remained in the hospital until the 12th of May, 1928.

The conflict in the medical evidence is even more marked, if possible, than the accounts of the accident.  One group of doctors, among them some of the most eminent in Omaha, testified that Mrs. Gerish's injuries were severe and permanent.  And she herself claims that she suffered injuries to the sacroiliac region of her back and to her limb which have completely disqualified her from following her profession.  She claimed a 50 per cent. degree of deafness from the accident, and one of the doctors in describing her stated that her face was that of a cripple.  On the other

hand, another group of doctors, also including some of the most eminent in Omaha, testified that her injuries were slight in the extreme; that many of the various injuries she claims could not have resulted, even though she had been thrown out on the pavement, as she claims, and they accuse her of malingering.

The bill of exceptions contains 680 pages and the author of this opinion has read it with great care and made an abstract of the testimony. It would unnecessarily extend this opinion to give the evidence in detail and we have only stated it sufficiently to indicate the sharp conflict.

Defendant claims various errors, and in view of the sharp conflict in the evidence it would seem that, if any important mistake of law was made, or if counsel abused their privileges in argument, a new trial would have to be ordered.

One of the errors claimed was the court's instructions to disregard the evidence of the witness Peter D. Larr as to the speed of Mrs. Gerish's car as it approached and entered the intersection. Mr. Larr is the painter who was on a scaffold 15 feet from the ground painting the G. J. Hatz house on the southeast corner of the intersection. He claims that he had just moved his scaffold from another location and had just climbed up to this position when he noticed the Gerish automobile approaching at a rapid rate of speed; that he noticed its speed on account of the presence of several small children on the street, and that he continued to watch the automobile until the time of the collision. And, being asked to estimate its speed, he said that he thought it was traveling at the rate of 25 or 30 miles an hour as it approached the intersection. He qualified himself as one capable of estimating the speed of an automobile. The district court was of the opinion, however, at the time of the trial, that our supreme court had held that one could not testify as to his estimate of speed of an automobile coming directly toward him. Mr. Larr's exact position seems to have been about 50 feet south of Binney street where he stood on the scaffold 15 feet up from the ground and at least 35 feet east of the center of Eighteenth

street. Therefore, the automobile was not coming directly toward him but a little to one side. Furthermore, it is not the law that one cannot estimate the speed of an automobile coming directly toward him, but he should be permitted to give his estimate, and the weight of his testimony is for the jury. The district court, after the admission of this evidence, orally instructed the jury to disregard Mr. Larr's estimate of speed, and gave a written instruction to the same effect. The oral instruction to disregard the answer of the witness Larr upon that point and the subsequent written instruction was error on the part of the district court. *Pierce v. Lincoln Traction Co.,* 92 Neb. 797; *Andersen v. Omaha & C. B. Street R. Co.,* 116 Neb. 487.

Counsel for plaintiff claim, however, that such action of the court, even if erroneous, was not prejudical, in that the testimony of Mr. Larr as to speed was not material. They contend that the defendant did not claim that the accident was due to excessive speed by Mrs. Gerish but to the fact that she turned to the south after first turning to the west, and that such turn, and not her rate of speed, caused the accident. The answer to this is that all of the parties at the trial, including the court, considered the rate of speed of her car to be a material matter. Furthermore, defendant pleads that plaintiff did not have her automobile under proper control as she entered the intersection, and that would include the element of speed. An examination and consideration of the entire record indicates that the rate of speed with which the two cars approached and entered the intersection was a material and important consideration and in our judgment Mr. Larr was in the best position of any one outside of the parties themselves to estimate the rate of speed at which Mrs. Gerish was traveling.

Defendant also complains on account of the giving of instruction No. 9 of the instructions given by the court to the jury on its own motion. Said instruction is as follows:

"As heretofore stated, defendant not only denies that he was negligent in any respect whatsoever, but alleges that it was the fault and negligence of plaintiff herself that was the direct cause of the accident and injury to her and

her car. The defendant having thus alleged negligence on the part of plaintiff, the burden of proof is upon him to establish the same by a preponderance of the evidence before he can prevail in said defense. In this behalf, you are instructed that, should you find from a preponderance of the evidence that the plaintiff herself was negligent in the driving and operation of her car immediately before and at the time of the collision which happened, and that such negligence was the sole proximate cause of the accident and injury to herself, then plaintiff cannot recover at all in this case and in that event your verdict should be for the defendant."

A similar instruction was held to be erroneous in the case of *Davenport v. Intermountain R., L. & P. Co.,* 108 Neb. 387. See, also, *Gibson v. Kelkenny,* 112 Neb. 524. It certainly was not the duty of the defendant to establish that it was the fault and negligence of the plaintiff that was the direct cause of the accident and injury to her and her car before he could prevail in his defense. The burden of proof to establish negligence was on the plaintiff, and if she failed to establish negligence on the part of the defendant she could not recover, and even if she was guilty of contributory negligence she could not recover unless her contributory negligence was slight and the defendant's gross in comparison therewith. Yet the court casts this burden upon the defendant, and while the court in instructions Nos. 2 and 3 lays down the correct rule, and in instruction No. 10 states the correct rule as to contributory negligence, the error in instruction No. 9 is sufficient to confuse the jury and it is impossible to tell which rule they attempted to follow. The error in instruction No. 9 is sufficient to require a reversal of the case.

Defendant also complains of the arguments and claims that the fact that defendant carried liability insurance was brought into too great prominence. It seems to us that this criticism is also well taken. If this were the only error complained of, we would hesitate to reverse the case, since the record does not show that objections were made to the argument at the time, and it is claimed that counsel for

defendant invited the error by first introducing the subject of insurance. Nevertheless, plaintiff's counsel dwelt too much on the part they claimed the insurance companies were taking in the trial, and it is one of the things that prevented the defendant from having a fair trial.

Complaint is also made in regard to the juror William A. Lamson. It seems that Mr. Lamson had a son 13 years of age who 11 years before had sustained, by falling down a flight of stairs, injuries similar to those Mrs. Gerish claims she was suffering from. Mr. Lamson was so impressed with the long suffering and crippled condition of his own son that he states in an affidavit made after the trial that "he had observed his own son's foot for many years, knew of the efforts that had been made to remedy his condition, and, due to his own experience and his observation of plaintiff's foot, he came to the conclusion at the time he saw same that her complaint concerning her leg and foot was true, and that her crippled condition was permanent; that, on account of the intimate knowledge gained through his own peculiar experience, he would have remained of this opinion regardless of the medical testimony on either side of the case." Mr. Lamson discussed the condition of his son before the jury. He was first in favor of giving plaintiff the full $50,000 she asked for and on the final ballot he voted for $25,000 and refused to join in the $15,000 verdict. We would hesitate to reverse the case on account of the evident disqualification of the juror Lamson, because the record indicates that he was an honest juryman and would have disclosed the state of his mind if he had been sufficiently questioned. It did not occur to him from the general questions and from seeing the plaintiff in the courtroom that a case so similar to that of his son would be developed. In failing to bring this out when they had the opportunity, defendant waived the objection. But the fact that Mr. Lamson was unfair and prejudiced is also another factor which prevented the defendant from having a fair trial.

Defendant also complains of unfairness and misconduct on the part of plaintiff. He points out that she testified

that her earnings in 1927 and in 1928, immediately prior to the accident, were in the neighborhood of $700 to $800 or $900 a month. On being forced to bring in her income tax returns, it developed that they were far less than that amount, a net income for both herself and her husband of not over $2,500.

During the trial an attempt was made to get the records pertaining to her case while she was in the Lord Lister hospital. This effort was made in the presence of plaintiff and her husband, and it appeared from the evidence of Dr. Henry and some employees at the hospital that they were probably lost. It developed after the trial was over, by an affidavit from Mrs. Henry, the manager of the hospital, that these records had been turned over to Mr. Gerish at the request of himself and the plaintiff some time before, and that they had sent them to an insurance company. Therefore, it would seem that Mr. and Mrs. Gerish knew where they were during the time that this effort was being made to secure them. It also appears from an affidavit made since the trial that Mrs. Gerish had gone through the Mayo Clinic at Rochester, Minnesota, in June, 1928, which fact she failed to disclose when questioned on the witness-stand about doctors who had attended her. The mind of a party does not always function clearly during the excitement of a trial and these may simply have been omissions and oversights of plaintiff, and not of sufficient importance to work a reversal, but nevertheless adding to the impression that the trial was not fair.

It appears from an examination of the record that defendant did not have a fair trial and therefore the judgment is reversed and the cause remanded.

REVERSED.