**FITZGERALD v. PENNSYLVANIA R. CO.**
No. 68, Docket 20736.

Circuit Court of Appeals, Second Circuit.

Nov. 24, 1947.

Stephen A. Machcinski, of New York City (William Paul Allen and Harold L. Schwartz, both of New York City, of counsel), for plaintiff-appellee.

Louis J. Carruthers, of New York City (Albert R. Connelly and Ralph L. McAfee, both of New York City, of counsel), for defendant-appellant.

Before SWAN, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The defendant has appealed from a judgment entered in the District Court for the Southern District of New York on a verdict for the plaintiff in a suit under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., to recover damages for personal injuries. The defendant moved to set aside the verdict on the ground that it was physically impossible for the plaintiff to have been hurt in the manner she testified. The denial of that motion raises the sole question presented for review.

On November 30, 1945, the date of the accident, the plaintiff, a woman then 27 years of age, was working for the defendant helping to wash passenger cars. She had been employed for several years as a repairman's helper and on November 25, 1945 had been assigned to the job in which she was engaged at the time of the accident. That sort of work is done as follows. The cars to be washed are moved by an engine slowly along a track on either side of which is a set of vertical rotating brushes which scrub the outside of the cars after they are sprayed. The cars are moved to within a short distance of this washing machine and then stopped while the conductor makes his report to the yardmaster and the foreman in charge of the washing machine makes ready for the work.

This part of the usual routine had been completed, just before the plaintiff was hurt, with regard to a draft of three passenger cars pushed by a large yard engine. When the draft had stopped with the nearer end of the car closest to the washing machine some 20 feet away from it, the plaintiff boarded the car. It was her duty to shut all open doors and windows before the

cars were run through the washing spray. She testified that she went through the cars from front to rear doing her work until she reached the rear end of the car to which the front end of the pushing engine was coupled. She first closed the trap door and the outside door on one side of the car and then the trap door on the other. She released the latch that held back the outside car door on that side, and, grasping the hand-holds which were on the outside of the car on each side of the steps, swung the lower part of her body over the edge of the closed trap door until both her feet rested firmly on about the middle of the lowest step. While in this position, with her left hand tightly gripping one of the hand-holds, she was closing the car door with her right hand when the draft gave a sudden lurch and she was thrown off. Up to the point of her fall the work had been done in the customary way and her method of getting off the car was the one she had been instructed to follow.

The step on which she was standing just before she fell was 22 inches above the ground and extended outwardly from the nearest rail 2 feet 2¼ inches. At the front of the engine there was a footboard which overhung the nearest rail. The distance from the rail to the outer edge of the footboard was 20 inches, but the width of the board was not shown. It was proved, however, that its front edge was 23¼ inches ahead of the nearest part of the pony wheels of the engine and that at its rear there was a perpendicular toeboard the top edge of which was 6 inches above the footboard. From a photograph in the record it may be fairly estimated in the light of the above measurements that the distance between the front of the pony wheels and the rear of the footboard was more than a foot. The plaintiff was the only person who testified as to what happened to her when she fell and her testimony was, as might be expected, somewhat vague. This much, however, is plain. The front part of the left side of her right foot in some way was caught under the slowly moving front pony wheel on that side of the engine and her foot and ankle were severely injured. An emergency stop was made when the engineer heard her scream. She testified that she was in a sitting position just after she fell and it is contended that it would have been physically impossible for the accident to have occurred as she said it had.

Of course a jury's verdict based upon an occurrence physically impossible should be set aside. Redman v. Baltimore & Carolina Line, Inc., 2 Cir., 70 F.2d 635, modified on other grounds, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636; Union Indemnity Co. v. Leidesdorf, 2 Cir., 37 F.2d 26, certiorari denied, 281 U.S. 730, 50 S.Ct. 246, 74 L.Ed. 1146. And it is, indeed, difficult to explain how the plaintiff's foot could have got under the pony wheel as it did, particularly in view of the fact that the step from which she fell was over two feet outside the rail and the fact that only the left side of her right foot was under the wheel. That she did fall in getting off the car and that her foot was partly under the pony wheel are, however, known facts. But if she fell without any sudden and unexpected lurch of the car or because she tried to get off in a manner contrary to her employer's instructions, as, for instance, by leaving at the end directly in front of the engine, the jury might have found that her injuries were not caused by any negligence on the defendant's part. Since she did in some way get from the car to the position where she was injured by the pony wheel, it is plain enough that how she got there and what caused her to go were issues of fact for the jury. One such issue was whether the car did lurch as, of course, it might have. Unquestionably that was physically possible and a finding by the jury to that effect meant only that the defendant's witnesses were not believed. Whether the lurch, if found to have occurred, was caused by the defendant's negligence was again obviously a jury question. The verdict shows that those questions were resolved in favor of the plaintiff and what follows presupposes that much. Another jury question was whether the plaintiff was getting off the car as she said she was. That too, involved only her credibility and there was no direct contradiction of her testimony. If the jury had not seen fit to believe her and had reached the conclusion that she had gone out in the only other possible way, through the diaphragm opening

at the end of the car, there would still have been an issue for it as to her contributory negligence. But that would have concerned only the amount of recoverable damages. It is apparent that this case presented questions to be submitted to the jury. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598. That they were submitted in a clear and correct manner is not disputed.

Judgment affirmed.