**FORD et al. v. SOUTHWESTERN GREY-HOUND LINES, Inc.**

No. 12557.

United States Court of Appeals
Fifth Circuit.

March 20, 1950.

Alfred M. Scott, Austin, Tex., Letcher D. King, Abilene, Tex., for appellants.

Carl P. Springer, Abilene, Tex., for appellee.

Before HUTCHESON, Chief Judge, RUSSELL, Circuit Judge, and DOOLEY, District Judge.

DOOLEY, District Judge.

Early in the afternoon of April 21, 1946, a Buick automobile driven by Volney Ford and also occupied by Gertrude Ford, David Wilson and Henry Lawson, collided with a motor bus driven by C. K. Wilson, employee of the Southwestern Greyhound Lines, Inc., near the west end of a narrow bridge on a public highway, a short distance from Baird, Texas. The said Volney Ford and Gertrude Ford were killed in the collision. The respective beneficiaries of said decedents under the death statute of Texas brought this suit for damages against the bus company. The parties will be called plaintiffs and defendant, as they stood in the trial court. Federal jurisdiction rests on diversity of citizenship and the requisite amount in controversy. The trial judge directed a verdict for the defendant. The plaintiffs have duly appealed.

The test which governs in reviewing a directed verdict is well settled. The evidence must be viewed in the light most favorable to the losing party. Every inference that may properly be drawn from the evidence must be indulged against the instruction. If the record reflects any substantial testimony of probative force in favor of the losing party, same forbids a directed verdict. A peremptory charge is warranted only when the evidence is such that no other reasonable verdict can be rendered and the winning party is entitled, as a matter of law, to a judgment.[1]

The plaintiffs alleged that the driver of the defendant's bus was negligent in certain particulars, proximately causing the collision, that is, (a) the driver of the bus drove same too fast and, (b) he drove same down the center of the highway and, (c) he was at fault under the discovered peril rule.

The defendant alleged that the driver of the Buick automobile was negligent in certain particulars, proximately causing or contributing to the collision, in that, (a) said driver was driving the automobile at such speed that he had no control of the same and, (b) he failed to keep a proper lookout and, (c) he drove the automobile too fast and, (d) he drove same on the wrong or left hand side of the highway.

No useful purpose would be served by reviewing the evidence in detail. The question is simply one of factual appraisal, and of course there is such diversity *ad infinitum* in the facts of tort cases, that each case has to be viewed in its particular mold. A summary is enough.

First some undisputed facts will be noted. The highway ran virtually east and west at the place of the collision, and was straight with some incline away from the bridge in either direction, more so to the east, but at a distance of about 160 feet east of the bridge the highway came out of a curve around a hill and down a declivity until the straight stretch was reached approaching said bridge, and likewise at a distance upwards of 400 feet west of the bridge the highway came out of some uneven terrain and turned into the straight stretch approaching said bridge. A paved strip 20 feet wide ran down the middle of the highway. The driver of the Buick automobile was traveling on said highway for the second time at the locality in question, but the driver of the bus had been over it frequently. The Buick was traveling west and the bus was traveling east. The weather had been rainy, and it was drizzly or misty at the time in question, visibility was limited and the moisture had made a slick highway. A "Narrow Bridge" sign was located alongside the paved highway, at a distance of about 160 feet, both to the east and the west of the bridge. The bridge, a concrete structure, was 20 feet long, and 18 feet wide be-

---

1. White v. White, 141 Tex. 328, 172 S.W. 2d 295.

tween the parapets. The bus tore down one guardpost near the west end of the bridge, and battered the concrete parapet along the south edge of the bridge. The impact of the collision knocked the Buick east back across and some 10 to 20 feet more beyond the bridge.

The plaintiffs' evidence as to the speed and course of the bus includes the testimony of the surviving occupants of the Buick. They testified that when the Buick was about 125 feet from the bridge they saw the oncoming bus some 300 feet west of the bridge, traveling apparently 55 to 65 miles per hour, and that it was some 2 or 3 feet to the left outside its proper lane astride the middle line of the highway. Another witness, one of the passengers on the bus, testified that he thought it was going around 45 miles per hour at the time of the collision. The bus driver did not deny that the bus was on a course covering the center line of the highway in coming toward the bridge. The defendant's counsel in dealing with the contention that its bus driver was driving too fast at the time in question, and on a course astride the center line of the highway, defends the directed verdict on the theory that the testimony saying the bus was traveling 55 to 65 miles per hour as it neared the bridge in question is pure conjecture and unbelievable, since as a known physical fact no one can face a vehicle coming toward him and give any reasonable estimate of its speed, and on the theory that the testimony of the plaintiffs' witnesses saying that the bus was some 2 or 3 feet over the center line of the highway must fall before the undisputed facts, since these witnesses in the Buick "could not observe the position of the bus on the highway if it were as much as 300 feet west of the bridge, the bridge being 20 feet long and the witnesses 125 or 130 feet east of the bridge, in rainy, misty weather". Of course one facing an oncoming vehicle, has diffi-

culties in estimating its speed, but we think that handicap goes only to the weight of the evidence. The weight of authority on this very question accepts such evidence.[2] In Texas the courts have been quite liberal in admitting opinion evidence as to the speed of motor vehicles.[3] The defendant's other point that the occupants of the Buick could not have told whether the path of the bus overlapped the center line of the highway proves too much. The bus driver testified that he saw the Buick on the wrong side of the highway some 125 feet east of the bridge when the bus was around 300 feet west of the bridge, and so plaintiffs' witnesses and the bus driver claim to have seen the respective vehicles at about the same instant. Often a claim of physical impossibility is disposed of as raising only a question for the jury.[4] The defendant's counsel also say that the physical facts show the collision occurred on the south side of the highway, which was the right side for the bus. Even so we do not think this conclusively refutes the testimony that the bus had been traveling partly across the center line of the highway as it came toward the bridge, nor that it was traveling fast. In fact the bus driver testified that he made a change of course by a turn to his right towards the south edge of the traveled highway when he was almost to the bridge, and that movement put the bus where it was at the time of the collision.

In the defendant's pleading negligence on several grounds is alleged against the driver of the Buick, but the only one of said claims coming even near the border line between negligence as an issue of fact and negligence as a matter of law, is that of said driver being on the wrong side of the highway at the time of the collision. The testimony is that when the driver of the Buick came in view of the bus rounding the curve into the straight stretch of highway on the east next to the bridge he drove

2. San Antonio Public Service Co. v. Murray, Tex.Civ.App., 59 S.W.2d 851; Gerish v. Hinchey, 120 Neb. 51, 231 N.W. 503; Lewis v. Miller, 119 Neb. 765, 230 N.W. 769, 70 A.L.R. 532; Bianchi v. Millar, 94 Vt. 378, 111 A. 524; Owens v. Iowa County, 186 Iowa 408, 169 N.W. 388.

3. Bee Line Coaches v. Folterman, Tex.Civ. App., 207 S.W.2d 986.

4. Croker v. Cent. Vermont Ry., Inc., 2 Cir., 172 F.2d 324; Fitzgerald v. Pennsylvania R. Co., 2 Cir., 164 F.2d 323.

first to his left across the highway until he found himself hemmed in by the line of guardposts flanking the entrance to the bridge and then turned into the bridge, but on the left side, and was still on the left side partly or altogether at the time of the collision. A driver in a collision on his wrong side of the highway is not always held negligent, however.[5] The theory of the plaintiffs is that the driver of the Buick was so scared by the perilous prospect of meeting the bus on the bridge, after seeing it coming on a path over the center line of the highway, and at a fast speed, that in a panic he turned first to his left and then back to enter and cross the bridge, and that the collision followed almost instantly. We grant that this erratic action of the driver of the Buick might be explained as plain negligence on his part, in fact negligence *per se,* but at the same time we think there is nothing to rule out as a matter of law the alternative inference that he may have been acting under the excited impulse of sudden panic induced by negligence of the bus driver. The picture here is that the jury might have thought the interplay between the moving Buick and bus and intervening bridge warned that a meeting thereon was a live hazard. In fact the collision occurred about 15 or 20 feet from the west end of the bridge. If the vehicles had, as they came near doing, actually met on the bridge the room to pass safely would have been a close margin at best and the risk of accident real. Neither do we think that the record closes the door against a jury inference that the bus driver failed in proper care and caution as to the control, course and speed of said vehicle even for the contingency of a meeting with the Buick away from the bridge on the open highway. It is the settled law in Texas that a negligent person is responsible if his "negligence has caused another to be surrounded by such circumstances as to him appear to threaten the destruction of his life, or serious injury to his person, whether that person be prudent or imprudent, if, in an effort to save his life, he makes a choice of means from which injury results, and, notwithstanding, it may turn out that if he had done differently, or had done nothing, he would have escaped injury altogether". International & G. N. Ry. Co. v. Neff, 87 Tex. 303, 28 S.W. 283, 286. We think it was properly in the province of the jury to decide whether the driver of the Buick should be acquitted of negligence in spite of being on the left hand side of the highway.[6]

Next is the question of discovered peril. The bus driver said that when he first saw the Buick, some 425 feet away and beyond the bridge, it was on the wrong side of the highway with its left front wheel off of the pavement. He said the bus was then going about 25 miles per hour. The Buick stayed on the wrong side of the highway. In the meantime before the collision the Buick traveled about 165 feet and the bus about 260 feet. The bus had good air brakes on all wheels and dual tires on its rear wheels. The bus driver testified that he put the brakes on enough to slow the bus down, thinking the Buick would have time to get across the bridge in the clear, and had slowed the bus down to about 15 miles per hour at the time of the collision, but had not tried to stop the bus, as he thought if the brakes were put on strong it might jeopardize his control of the bus. During cross examination he said, "Well, I wouldn't say whether I could have stopped or not", "Yes, sir, I tried to slow my bus down, which I did", "Not to a complete stop, no sir, under the conditions". The next question and answer together are also quoted from his testimony. "Q. Isn't anybody in pretty much of a difficulty if they are on the wrong side of the road in front of that bus of yours and you driving? A. If they don't move over, yes sir." The point was enough debatable upon the evidence to raise a jury issue on the bus driver's neglect under the discovered peril doctrine.[7] The defendant's counsel, dealing

5. Killen v. Stanford, Tex.Civ.App., 170 S.W.2d 792.

6. Beck v. Browning, 129 Tex. 7, 101 S.W. 2d 545; Hicks v. Frost, Tex.Civ.App., 195 S.W.2d 606.

7. Wilson v. Barnes, Tex.Civ.App., 224 S.W.2d 892; Byerley v. Bauer, Tex.Civ. App., 99 S.W.2d 641; Vonsteen v. Rollish, Tex.Civ.App., 133 S.W.2d 589; Martinez v. Pena, Tex.Civ.App., 139 S.W.2d 337.

with the allegation of discovered peril, defends the directed verdict on the theory that although the bus driver saw the Buick was on the wrong side of the highway when the two vehicles were some 425 feet apart, still its driver had plenty of time to get the vehicle back to his right side before the two vehicles met, and that the occupants of the Buick "were not in a position of peril or in a dangerous situation until they crossed the bridge and remained on the wrong side of the road". In our opinion that argument ignores the significance of the narrow bridge. The clearance of the bridge itself was only 18 feet. In other words, two full width vehicles, going fairly fast could not pass with dependable safety on said bridge. The vehicles missed meeting on the bridge only by a few feet. A meeting on the bridge would have been fraught with great danger, particularly if the bus had been over the center line, and obviously it would have taken close driving to keep the 8 foot bus wholly on its half of the driving space across said bridge. In other words at best even if the Buick driver had changed course to the right he still would have run the risk of not being able to straighten out and regain steady control of his vehicle in time to thread through safely, had the vehicles happened to meet on the bridge.

The Supreme Court and the Courts of Appeals have frequently drawn the dividing line which determines whether a case must go to the jury.[8] The working of the settled legal principles governing this question is shown against the background of diversified facts and evidence in the cited decisions. It was erroneous to direct a verdict herein on the evidence as it stands in the present record. The judgment of the trial court is reversed and the cause remanded for a new trial.

8. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Ellis v. Union Pacific Railway Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572; Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413; Reid v. Maryland Cas. Co., 5 Cir., 63 F.2d 10; Farris v. Interstate Circuit, Inc., 5 Cir.,

116 F.2d 409; Dawson v. McWilliams, 5 Cir., 146 F.2d 38; Marsh v. Ill. Cent. R. Co., 5 Cir., 175 F.2d 498; Baltimore & O. R. Co. v. Postom, D.C.Cir., 177 F.2d 53; Atlantic Greyhound Corp. v. Hunt, 4 Cir., 163 F.2d 117; Atchison & T. & S. F. Ry. Co. v. Simmons, 10 Cir., 153 F.2d 206.