240 F.2d 266
 Burton J. THOMPSON, d/b/a Thompson Trucking Company; and
Merleon Glenn Walker, Appellants,
v.
Raymond ALLEN, Sr., Appellee.
Burton J. THOMPSON, d/b/a Thompson Trucking Company; and
Merleon Glenn Walker, Appellants,
v.
Elton D. FOUNTAIN, Appellee.
 Nos. 5437, 5438.
 United States Court of Appeals Tenth Circuit.
 Dec. 27, 1956.
 
 J. O. Emerson, Kansas City, Kan. (Edw. M. Boddington and Edw. M. Boddington, Jr., Kansas City, Kan., were with him on the brief), for appellants.
 Elmer C. Jackson, Jr., and William H. Towers, Kansas City, Kan., for appellees.
 Before BRATTON, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 These are companion cases arising out of the same accident. In Number 5437 Raymond Allen, Sr., sued Burton J. Thompson, doing business as Thompson Trucking Company, and Merleon Glenn Walker, the driver of one of Thompson's trucks, for injuries suffered in a collision between a 1952 Ford automobile he was driving and a Thompson truck being driven by Walker, his agent and employee. In Number 5438 Elton D. Fountain, the owner of the Ford car and a passenger therein at the time of the accident, sued to recover for injuries and resulting damages suffered by him in the same accident. The complaints in the two cases, aside from the names of the party plaintiffs, are almost identical and reference therefore will be limited to the allegations of the complaint in case Number 5437.
 
 
 2
 In substance, Allen alleged that about 9:00 P.M. on February 1, 1953, he was driving in an easterly direction along State Avenue west of Kansas City, Kansas, which is also known as U.S. Highway 24-40. At this place the highway is a four-lane highway, two lanes going east and two going west. He alleged that he was proceeding in an easterly direction in a careful manner; that Walker was driving a trailer truck in an easterly direction in the south or outside lane of traffic next to the shoulder; that the Ford car was behind and to the left of the truck; that he was driving in the north or passing lane; that as he approached the truck he blinked his lights to indicate that he intended to pass; and that as he reached the truck even with the rear end of the trailer Walker negligently swerved his truck into the north or passing lane, thereby causing the Ford car to collide with the truck. It was alleged that the accident was caused by the carelessness and negligence of the driver of the truck.
 
 
 3
 Both cases were submitted to a jury and in each a verdict was returned for the plaintiff. Seven assignments of error are urged for reversal but these may be summarized as follows: (1) Plaintiff was guilty of contributory negligence; (2) the evidence fails to establish negligence on defendant's part and (3) the Court erred in giving a supplemental instruction to the jury.
 
 
 4
 The undisputed facts show that the accident occurred on U.S. Highway 24 and 40, about three or four miles west of Kansas City, Kansas. Appellees were travelling eastward in returning to Kansas City from Topeka, Kansas. The highway there was a four-lane highway, two lanes each way with the right lane the outside lane considered the travelling lane and the left inside lane the passing lane. The defendant driver was driving a trailer tractor truck, loaded with cattle and was likewise going to Kansas City and was prior to the impact travelling in the south or outside lane of traffic. The accident happened while the vehicles were going up an incline. As the Ford car approached the truck, the truck caught up with a slow-moving vehicle in front and started to pull over into the passing lane to pass this vehicle about the time the Ford started to pass and the collision occurred.
 
 
 5
 Allen was the driver of the car. Fountain, the plaintiff in Number 5438, was riding in the front seat with him. Both plaintiffs testified in substance that they were travelling at a speed of about 40 or 50 miles; that as they approached the truck they were out near the center with the truck to the right of them; that they blinked their lights to pass; that as they started to pass the truck was still in the right lane of traffic; that as they got just about to the rear of the truck it swerved out causing the collision. Allen testified that he did not recall whether he applied his brakes prior to the collision. Roscoe Davis and Louis Lemansky, two employees of the Wyandotte County Sheriff's Office, testified for the plaintiff. Their testimony concerned itself with the physical facts they saw when they inspected the place where the collision occurred.
 
 
 6
 Walker, the driver of the truck, testified that he was driving approximately 40 Miles an hour when he turned into the passing lane to go around the car in front of him; that he looked into the rear view mirror before turning into the passing lane and saw nothing in the passing lane close to him as he started to turn out. A Mr. and Mrs. Horn testified that they saw the Ford weave in and out of traffic about fifteen or twenty miles west of Kansas City, causing the west bound traffic to dodge away and that they followed the Ford for about five or six miles. That would mean their last view of the Ford was about fourteen miles west of Kansas City and about ten miles from the scene of the accident. They were driving about 50 or 60 miles an hour when the Ford passed them. W. I. Tripp testified that as he started to pass a truck he noticed in the rear view mirror a set of headlights coming at a high rate of speed and he pulled back to let it pass. He said the Ford 'zoomed' past him but regarding its weaving he would say it was a small amount. This was at least one-half mile from the point of collision. Keith Elliott was driving a truck about a fourth of a mile behind the truck in question. He testified he was driving about 40 miles an hour when a black Ford passed him at an estimated speed of 75 miles per hour. He testified that the truck ahead was pulling out to pass a slow car ahead at the time the Ford passed him.
 
 
 7
 This in substance was the oral testimony adduced at the trial. A causal glance thereat indicates there is a direct conflict in the testimony. Neither is the defendant's evidence as convincing that it compels the conclusion that plaintiffs were guilty of contributory negligence. The Horns' testimony has little probative value. The matter to which they testified occurred ten miles away from the scene of the accident. Assuming that the Ford car was being driven in a reckless manner, it does not follow as a matter of course that it continued to be driven in such manner for the intervening ten miles. Indeed, Tripp's testimony that when the Ford car passed him about a half of a mile behind the Walker truck it was not noticeably weaving to any extent tends to refute that the car continued to be driven in a weaving and dangerous manner. Elliott's testimony also tends to refute Walker's testimony that he saw no one in the passing lane when he looked into the rear view mirror as he was about to turn into the passing lane. At that precise point, according to Elliott's testimony, the Ford was in the passing lane about a quarter of a mile away and clearly visible. The oral testimony in our opinion clearly presented a jury issue of the alleged negligence of the defendant and the contributory negligence of the plaintiff, unless the physical facts are such as to compel a different conclusion.
 
 
 8
 Where testimony is positively and conclusively contradicted by physical facts, neither the court nor the jury can give it credence, but where such physical facts may lead to one hypothesis as reasonably as to another, it conclusively establishes neither.[1] In general, the physical facts relied upon are the great weight of the loaded truck compared to that of the Ford, the slight damage to the truck as compared to the almost total destruction of the Ford car, absence of tire skid marks, and the position of the vehicles after impact. Without analyzing these facts in detail, it is sufficient to say we are of the opinion they are not of such a conclusive character as to establish with that degree of certainty required that the defendant was not negligent of in any event plaintiffs were guilty of contributory negligence so as to take the case from the jury and require a directed verdict.
 
 
 9
 A final contention is that the Court committed reversible error in giving a supplemental instruction to the jury. On Friday evening when the jury was called in to be dismissed for the day, the foreman reported to the Court, 'Your Honor, we, the jury, cannot arrive at a verdict.' The Court then asked whether if they came back Saturday morning they thought they might resolve the issue. To this the foreman answered, 'We have gone into that, too, and I believe the answer was no. We are sort of at an impasse.' The Court, however, was of the opinion that there was a possibility of a verdict and asked them to return on Saturday morning to deliberate a while longer. The next morning the protested instruction was given. The court prefaced its remarks with solicitude regarding the difficulties juries sometimes meet in arriving at verdicts, but that if this jury failed it would mean a trial of
 
 
 10
 '* * * this case again with the same evidence and it is doubtful in the mind of the Court whether a more intelligent jury could be obtained to try the same case than this jury. A minority should listen with attention to the arguments of the majority.'
 
 But the Court added:
 
 11
 'Now, the Court is not telling you to reach a verdict in this case, because a verdict must be the conviction of each individual juror.'
 
 
 12
 Thereupon the jury retired for further deliberations and returned with a verdict for plaintiff in each case.
 
 
 13
 It is asserted that this instruction was one-sided; that it over-emphasized the duty of the minority to re-examine their thinking because of the fact they were in the minority; and that it did not equally emphasize the duty of the majority to give further consideration to the views of the minority. It no doubt would have been a wholesome addition to the instruction had the Court also alluded luded to the continuing duty of the majority to listen to the views of the minority. But failing to do this does not condemn the instruction or constitute reversible error unless it must be said from a consideration of the instruction as given that it was coercive in that it gave the jury the impression that they must reach a verdict and left the impression with the minority that they should heed the majority, notwithstanding that they would otherwise still adhere to their individual views.
 
 
 14
 The landmark case in the Supreme Court on such instructions is Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 157, 41 L.Ed. 528, where the Supreme Court approved the following instruction:
 
 
 15
 '* * * if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.'
 
 
 16
 The Supreme Court treated the instruction as requiring each juror to listen with deference to the view of each other and as informing the jurors that no juror should go to the jury room with a 'blind determination that the verdict shall represent his opinion of the case at that moment, * * *.' A goodly number of cases have considered such instructions and the decision in all of them has turned upon whether a consideration of the entire instruction made it clear that the jury understood that the verdict at all times must reflect the views of each juror, and that so long as a single juror after having given consideration to the views of all the other jurors and having taken into consideration that he was in the minority, if he nonetheless has a personal conviction contrary to the others, then it is his duty to adhere to his own views.[2] We have considered similar instructions in two cases. In Speak v. United States, 10 Cir., 161 F.2d 562, 564, we upheld an instruction which while not referring to minority or majority views urged the jurors to '* * * pay * * * respect to each other's opinions * * *' and in Apodaca v. United States, 10 Cir., 188 F.2d 932, we held an instruction proper which cautioned each juror to consider the other's views and then charged that the dissenters should consider if their stand is reasonable. We think the trial court's instruction to the jury made it clear that neither the minority nor the majority should give way so long as they had fixed views. Thus, while the Court said that a 'minority should listen with attention to the arguments of the majority' it further told the jury that 'the Court is not telling you to reach a verdict in this case, because a verdict must be the conviction of each individual juror.' We find no reversible error in the giving of this instruction.
 
 
 17
 What has been said disposes of the contention that the Court erred in refusing to direct a verdict or in overruling a motion for a new trial.
 
 
 18
 Affirmed.
 
 
 
 [1]
 Ford v. Southwestern Greyhound Lines, 5 Cir., 180 F.2d 934; Croker v. Central Vermont Ry., 2 Cir., 172 F.2d 324; United States v. Holland, 9 Cir., 111 F.2d 949; Nash v. Raun, 3 Cir., 149 F.2d 885
 
 
 [2]
 Railway Express Agency, Inc., v. Mackay, 8 Cir., 181 F.2d 257, 19 A.L.R.2d 1248; Hill v. Wabash Ry. Co., 8 Cir., 1 F.2d 626; Lehigh Valley R. Co. v. Allied Machinery Co., 2 Cir., 271 F. 900; Boston & M.R.R. v. Stewart, 1 Cir., 254 F. 14